414 So.2d 705 (1982)
STATE of Louisiana
v.
Mid SIMMONS.
No. 81-KA-2262.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.
*706 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., David W. Burton, Asst. Dist. Atty., for plaintiff-appellee.
Joe J. Tritico, Lake Charles, James K. Nichols, De Ridder, for defendant-appellant.
NESTOR L. CURRAULT, Justice Pro Tem.[*]
Defendant Mid Simmons was charged by Bill of Indictment with the second-degree murder of Parham Johnson. After trial by jury, the defendant was unanimously found guilty of manslaughter. On June 19, 1981, he was sentenced to six years imprisonment at hard labor. The defendant now appeals on the basis of eight assignments of error as grounds for reversal of his conviction and sentence.
Factual Synopsis
The defendant and the victim, Parham Johnson, had been friends for several years, frequently socializing together. After the death of his wife, the defendant and Mrs. Johnson established a closer relationship, culminating in an affair, and at one time Mrs. Johnson had left her husband and stayed with the defendant for approximately a week. Parham Johnson was aware of his wife's relationship with the defendant, but both he and the defendant maintained their friendship.
On October 15, 1980, Parham Johnson and his wife had been fishing. When they returned home, they decided to invite the defendant over to eat fish. The defendant came to the Johnson home, ate with them, and after dinner, Mrs. Johnson went to bed. The defendant and Parham Johnson remained on the front porch talking and drinking.
At some point during the evening, Mid Simmons left the Johnson home. He later returned and an argument ensued between the defendant and Parham Johnson, during which the defendant threatened to kill the victim. Both Mr. and Mrs. Johnson asked the defendant to leave. Apparently drunk the defendant refused, saying "I go where I please, when I please, and leave at the same goddamn time."
*707 After being threatened, Parham Johnson went inside the house to get his gun. The defendant went to his car, removed his shotgun from the back seat, and placed it on the roof of his car. Upon returning to the front porch of the house, Parham Johnson fired one shot which skipped across the hood of the defendant's vehicle and struck Mrs. Johnson's car on the fender. The defendant fired almost simultaneously, striking Parham Johnson in the face, mortally wounding him.
Assignment of Error No. 1
Defendant contends that the trial court erred in failing to advise the jurors that they could take a recess during the course of their deliberations. Defense counsel concedes, in brief, that there is no statutory authority or Louisiana case precedent in support of his argument. Additionally the record reveals there was no contemporaneous objection lodged by the defense to the length of the deliberations.
The minutes reflect that the jury retired to deliberate at 4:20 p. m. on April 30, 1981. At 5:00 p. m. and 10:30 p. m., additional instructions were requested. At 11:45 p. m. they returned with the guilty verdict. It is significant to note that although instructed that they could communicate with the trial court, the jury never requested a break from their deliberations.
The length of time of jury deliberation is a matter directed to the discretion of the trial judge and without more, it cannot constitute coercion. U. S. v. Caracci, 446 F.2d 173 (5th Cir. 1971) cert. den. 404 U.S. 881, 92 S.Ct. 202, 30 L.Ed.2d 162. In State v. Williams, 341 So.2d 370 (La.1976), this Court held that requiring deliberation without break during a normal lunch period, by itself, presented no indication that the jury's verdict was improperly influenced. There is nothing in the record to indicate that the verdict was rendered as a result of any coercive influence of the court.
Assignment of error No. 1 is without merit.
Assignment of Error No. 2
In this assignment, the defendant contends that the trial court erred in instructing the jury that in order to reach a verdict, ten of the twelve must agree.
Although the defendant acknowledges that the trial court's charge was derived from Louisiana Code of Criminal Procedure Article 782(A), he contends that said statute violates his rights to due process and equal protection as guaranteed by the Fifth and Fourteenth Amendments.
This Court, in State v. Jones, 381 So.2d 416 (La.1980), previously considered this argument. Noting decisions of the United States Supreme Court upholding the use of non-unanimous verdicts in cases involving twelve person juries[1], this Court held:
Defendant's contention that Burch[2] implies that the verdict of a twelve person jury must also be unanimous is belied by the opinion itself, which specifically indicates that the unanimity required of a six person jury is a function of its reduced size.
Assignment of error No. 2 is without merit.
Assignment of Error No. 3
By this assignment, the defendant asserts the trial court erred in denying the defendant's first motion for a new trial which alleged the jury's verdict was "contrary to the law and the evidence" in that the undisputed physical evidence adduced at trial established that the defendant acted in self-defense.
The evidence adduced upon trial of the case established that the defendant left the Johnson home at some point during the evening. He later returned and threatened to kill Parham Johnson while arguing with the victim on the outside porch. Both Mr. and Mrs. Johnson told the defendant to *708 leave the house and he refused saying "I go where I please, when I please and leave at the same goddamned time."
After being threatened, Parham Johnson went inside his home to retrieve his gun. The defendant went to his car to secure his gun, thereafter placing it on the top of his car. The defendant asserts that the victim fired two shots, the first shot striking the bumper of a car, and only after the second shot was fired did he return fire striking the victim in the head. Other witnesses contradict this testimony, indicating two shots were fired almost simultaneously. After the incident the defendant remained on the scene and told several bystanders "I killed the no good son of a bitch."
Although it is the burden of the State to prove beyond a reasonable doubt that a homicide was not committed in self-defense, State v. Collins, 306 So.2d 662 (La. 1975); Louisiana Revised Statute 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
The testimony establishes: that (1) the defendant left and returned to the Johnson home to initiate an argument; that (2) during the argument he was asked to leave the house and refused to do so; that (3) he threatened the victim's life; that (4) he armed himself in full view of the victim; and that (5) he did not at any time indicate a withdrawal from the conflict.
Even assuming that the victim fired first, applying the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), sufficient evidence was adduced at trial to establish the defendant as the aggressor in the dispute and thus preclude him from asserting a self-defense justification.
Assignment of error No. 3 is without merit.
Assignments of Error Nos. 4 and 5
By these assignments, the defendant contends that the trial court erred in denying defendant's second motion for a new trial based on newly discovered evidence.
The newly discovered evidence on which the motion was based was an admission by Mrs. Johnson that she had committed perjury during the trial and an allegation that the assistant district attorney had threatened her prior to trial to prevent her from testifying freely.
At the hearing on the motion for a new trial, Mrs. Johnson repudiated portions of her trial testimony. She testified that the assistant district attorney, David Burton, had intimidated her into testifying that the defendant had left the Johnson household and returned and that she had asked the defendant to leave her house. She further testified that she attempted to tell Mr. Burton of her husband's drinking habits and he refused to listen.
Mr. David Burton, the assistant district attorney, testified that he had met with Pauline Johnson once prior to trial during April of 1981, and once after her testimony had been elicited by the State but prior to being called as a defense witness. He denied any intimidation of Mrs. Johnson. His version of the interviews was substantiated by an investigator who was present during both sessions.
Pauline Johnson's statement given to Beauregard Parish deputies on October 18, 1980, three days after the shooting, stated that the defendant left her home and later returned. Her testimony, at the trial of this case, was to the same effect. This testimony was corroborated by that of her daughter, Sandra Simmons, who testified she saw the defendant's vehicle leaving the Johnson home, and that it was later when she heard the shots.
The October 18, 1980 statement likewise indicates that Mrs. Johnson asked the defendant to leave her home. Her testimony at trial was the same. Further, nearby neighbors, Derwood Causey and Rachel Meirs, testified they heard both Mr. and Mrs. Johnson requesting the defendant to leave their home.
*709 Recantation of trial testimony should be looked upon with the utmost suspicion. State v. Spell, 399 So.2d 551 (La. 1981); State v. McDonald, 387 So.2d 1116 (La.1980).
While an effort was made to support Mrs. Johnson's recantation of her trial testimony by allegations of prosecutorial intimidation, the corroboration was also found incredible by the trial judge.
The statutory motion for a new trial, Louisiana Code of Criminal Procedure Article 851, provides in pertinent part:
The court, on motion of the defendant, shall grant a new trial whenever: .... (3) New and material evidence that notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during trial, is available, and if the evidence had been introduced at trial it would probably have changed.
The test to be applied in considering a motion for a new trial based upon newly discovered evidence is whether the new evidence is so material that it ought to produce a different result from the verdict rendered at trial. The trial court has considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its ruling will be disturbed on appeal only when there is a clear showing of abuse of that discretion. State v. Spell, 399 So.2d 551 (La.1981); State v. Manning, 380 So.2d 54 (La.1980); State v. Tyler, 342 So.2d 574 (La.1977).
Pauline Johnson, from the beginning was a victim of divided loyalties. She had been intimate with the defendant and had once left her husband to stay with him. Her husband knew of the relationship with Mid Simmons and such was the source of the dispute between them on the night of the shooting. After her husband's death she had also been seen in the company of the defendant.
Upon consideration of the facts of this case, we cannot say the trial judge abused his discretion even if Pauline Johnson would testify in the manner indicated at the hearing on the motion for a new trial. It is the opinion of this Court that there is too much evidence contradicting her new version of the events of October 15, 1980, contained in the record for the verdict to be affected.
Assignments of error Nos. 4 and 5 are without merit.
Assignment of Error No. 6
By this assignment, the defendant contends the trial court abused its discretion in sentencing the defendant by failing to follow the sentencing guidelines as provided for in the Code of Criminal Procedure Article 894.1 or the recommendation of the victim's wife that the defendant should not be confined. On June 19, 1981, the defendant, while facing a possible maximum of twenty-one years, was sentenced by the trial judge to six years at hard labor.
A review of the record in this case reveals that the trial judge was extremely thorough in particularizing the sentence considering each and every aggravating and mitigating factor listed in Article 894.1 with respect to its application to the defendant.
The judge noted the defendant was seventy-one years of age, a lifelong resident of the parish, and a widower with one grown daughter. He further took cognizance of the fact that the defendant had a stable work record with no prior criminal history. Although medical problems were mentioned, the trial judge observed that most were the product of age and not illness.
Notwithstanding the defendant's status as a first offender, the trial judge felt suspension of sentence was not warranted by the facts and circumstances of the case and the subsequent conduct of the defendant.
Reiterating the facts of the case, the court noted that the defendant expressed no remorse for the killing. Evidence was also presented that the defendant continued to drink and while intoxicated had threatened witnesses in the case and even family members. In this frame of mind, the trial judge concluded, the defendant would not respond favorably to probationary treatment *710 and showed substantial likelihood to commit other offenses.
Further, the subsequent conduct of the defendant expressed an attitude of disrespect for the court and its power to regulate the conduct of society by the exercise of its penal authority.
A portion of the court's comments are excerpted below:
Because of course age is no defense, it is no justification. It does not mean when you reach a certain age level that you can go out and commit with impunity certain offenses ... that because one is getting up in years and because one does have some health problems, it is not a bar to penal consequences if there are factors that dictate confinement ... and I have concluded, Mr. Simmons, that in this case a sentence of imprisonment at hard labor is not only appropriate but necessary. This is not a case for suspended sentence or probation. A lesser sentence not involving imprisonment at hard labor would in my judgment unduly depreciate or deprecate the seriousness of your crime. As I have already said several times, you took a human life when you didn't have to.... Parham Johnson may not be helped and will not be helped by the action I take here today, but it willwhat action I take, Mr. Simmons, while a difficult one for me, will in my best judgment uphold the law of the state of Louisiana and will, in effect, punish you, make you pay a price, for having taken Parham Johnson's life. And it will let other people know in Beauregard Parish that there is a penalty of substance if a person commits that kind of act in this parish, even though he may be an elderly person, even though he may be a person who lived for many years as a good solid citizen.
As a general rule, a sentence is excessive if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355, 359 (La.1980); State v. Guiden, 399 So.2d 194 (La.1981). Upon consideration of the trial judge's articulation of reasons for sentencing and noting that the sentence imposed was well within the statutorily defined range, this Court cannot find the sentence grossly disproportionate to the severity of the offense or imposed merely for the purposeless infliction of pain and suffering.
Assignment of Error No. 7
By this assignment of error, the defendant asserts that the trial court abused its discretion in refusing to permit the defendant to remain on bail pending appeal.
Louisiana Code of Criminal Procedure Article 314 provides, in pertinent part:
Bail may be allowed after sentence and until final judgment if the sentence imposed exceeds imprisonment for five years except when the court has reason to believe, based on competent evidence, that the release of the person convicted will pose a danger to any other person in the community.
In articulating the reasons for the sentence imposed, the trial judge made the following comments:
... That the character and attitude of the defendant indicate that he is unlikely to commit another crime. Well, this may be difficult to say. I would like to believe that that is altogether true, and yet I have difficulty with it, Mr. Simmons, frankly because of the seeming lack of concern, remorse, regret. At the trial you never indicated any kind of remorse, anything to indicate, even under the difficult circumstances that you said existed, that you were sorry you shot Parham Johnson.
... Also, there is evidence that you have continued to drink. I don't know about in recent weeks or even in the last month or two, but there was evidence presented at the trial that the day you were arrested for murder of Parham Johnson that you were drinking and the District Attorney's Investigator would not take a written statement from you but told you to go see your lawyer. Mr. Martin testified *711 that you were drinking. This was a week give or take a day, after the shooting occurred. A few weeks after that shooting, you were stopped by a state trooper and law officers. They found you drinking in the car and driving.... James Simmons swore in the courtroom that you called and threatened him several times after the shooting and you told him, in effect, that if he didn't watch his smart mouth that he would be the next one to leave there. Also your own daughter, Mr. Simmons, and her husband called the law in January 1981 and indicated some problems with you about your drinking and perhaps some statements you had made .... two officers got on this stand and swore that in January they were called out there because your daughter and her husband were concerned about what was going on at the time. I mention those things simply to indicate to you that I have, unfortunately, some reservations about whether or not you might likely commit some other criminal activity if you were put on probation. I suspect that, if you were not drinking, the chances of you doing anything precipitous involving harm to another person, someone who might have testified in this trial, someone else, would not be very strong. DrinkingI cannot say I have confidence that you might not harm somebody. I hate to say that.
Based upon such evidence, this Court cannot say that the trial court abused its considerable discretion in refusing to grant bail to the defendant pending the outcome of this appeal.
Additionally, the issue of whether or not the trial court has improperly refused bail is neither properly nor timely raised on appeal. The correct procedure is to invoke the supervisory jurisdiction of this Court through Louisiana Code of Criminal Procedure Article 322.
Assignment of error No. 7 is without merit.
Assignment of Error No. 8
Defendant argues by this assignment that the trial court committed a breach of judicial decorum by engaging in abusive behavior directed toward counsel for the defendant, reflecting to the jury a predisposition against the defendant and thereby prejudicing the jury against the defendant.
A review of the transcript presented for appeal shows no evidence whatsoever which indicated the trial judge acted improperly, in any manner exhibited a personal bias against the defendant or expressed any opinion as to the guilt or innocence of the accused in the presence of the jury.
Assignment of error No. 8 is without merit.

DECREE
For the reasons assigned, the conviction and sentence of the defendant for the crime of manslaughter is affirmed.
NOTES
[*] Judges Nestor L. Currault, Fred S. Bowes and Edward A. Dufresne, Jr. of the Court of Appeal, Fifth Circuit, participated in this decision as associate justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), ten jurors out of twelve; Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) nine jurors out of twelve.
[2] Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979).