446 So.2d 355 (1984)
STATE of Louisiana
v.
Willie Moses ADAMS.
No. CR83-431.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
Rehearing Denied February 29, 1984.
Writ Denied May 4, 1984.
*358 Nick Pizzolatto, Jr., Lake Charles, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., Karen Price, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOMENGEAUX, Judge.
On June 22, 1982, the defendant, Willie Moses Adams, was indicted by a Calcasieu Parish Grand Jury for manslaughter, a violation of La.R.S. 14:31. On February 11, 1983, a jury of twelve returned an 11-1 verdict of guilty of manslaughter against defendant Adams.
The trial court, following a hearing on defendant's motion for new trial, denied the motion and proceeded to sentence him. He was sentenced to serve five years at hard labor without benefit of parole, probation or suspension of sentence with the Louisiana Department of Corrections. The defendant appeals denial of the motion and alleges fifteen (15) assignments of error.

FACTS
The defendant, Willie Moses Adams, and the victim, John Celestine, first confronted each other in front of a local church following evening services therein on May 1, 1982. Both men intervened in an altercation between the defendant's daughter and the victim's daughter. An argument ensued and John Celestine, angered by the occurrences, picked up a two-by-four piece of lumber and moved toward the defendant. The victim was restrained by his sons who took the two-by-four away from their father, John Celestine. Mr. Celestine then picked up a piece of pipe with concrete on one end and again approached the defendant. Mr. Celestine was again restrained by his sons. The fracas ended, and everyone went home.
Shortly after the defendant returned home, he heard a disturbance some blocks away in the direction of John Celestine's house. Upon discovering that his girlfriend, Helen Holmes, was not at home, the defendant went further down the street to the victim's residence. When he arrived he discovered that his girlfriend, Helen, and her daughter had been physically fighting with the victim's daughter and another girl. Though the fighting had ceased, the participants in the fray were still arguing. The defendant stood at the driver's side of his car, between the car and the open door, with his gun hanging beside his leg.
As defendant surveyed the scene, one of the victim's daughters shouted that the defendant had a gun. At this point, the victim, John Celestine, ran up to defendant's car and tried to pin Willie Adams between the door and cab of his car. The defendant managed to lower his gun over the top of the car door and fired a shot. John Celestine fell, mortally wounded. He was pronounced *359 dead a few hours later at a local hospital.
The defendant fled the scene on foot. As he ran away he was shot at repeatedly by the victim's grandson, Henry "Pop" Harrison. Later that night the defendant turned himself in to the local police, telling several officers that he tried to work things out but could not. He also informed the officer that he had been shot in the hand by "Pop" Harrison.
ASSIGNMENT OF ERROR NO. 1:
Through this assignment of error the defendant alleges that the trial court erred in overruling his objection to the introduction of the projectile identified as having been fired from the defendant's weapon. The defendant argues that this exhibit was inadmissible evidence as the state failed to either identify the projectile or to show a complete chain of evidence which would demonstrate that it had been removed from the victim's head and that ballistics comparisons showed it to have been fired from defendant's gun.
It is not necessary to determine whether or not the state established a continuous chain of custody without any deficiencies. The law is well settled that:
"any deficiencies in the chain of custody [are] properly attributable to the weight, rather than the admissibility of evidence." [Emphasis added].
State v. Tonubbee, 420 So.2d 126 (La.1982). See also State v. McCabe, 420 So.2d 955 (La.1982); State v. Taylor, 422 So.2d 109 (La.1982); State v. Robertson, 421 So.2d 843 (La.1982); State v. Davis, 411 So.2d 434 (La.1982). Thus, the only requirement which the state had the burden to meet in order to introduce this exhibit into evidence was for the state to show that:
"the evidence as a whole established that it [was] more probable than not that the object introduced was the same as the object which was originally seized by the officers."
State v. Sharp, 414 So.2d 752 (La.1982). There appears to be more than enough evidence from which to conclude that it is more probable than not that the envelope submitted in globo contained the projectile removed from the victim's head.
The testimony demonstrates that Lieutenant McCann received the bullet from Dr. Smith at the autopsy. Lieutenant McCann then placed the projectile in the evidence envelope and turned it in at the Sulphur Police Department Evidence Room. Later, Lieutenant McCann took the envelope from the Evidence Locker and conveyed it to the Calcasieu Parish Crime Lab for testing. There the envelope was received by Johnny Byrd. Mr. Byrd testified that this projectile was fired from the weapon owned by the defendant and used to kill John Celestine on May 1, 1982.
The defendant offers no evidence whatsoever which would indicate that the evidence was tampered with or in any way disturbed. The defendant merely alleges that the exhibit was inadmissible since there was more than one key to the Evidence Locker and because the projectile was not identified in court. These allegations were presented to the jury. It was for the jury to decide how much weight to give the evidence presented and whether or not defendant's contention was persuasive. Moreover, even if the envelope as submitted was not allowed into evidence there appears to be more than enough additional evidence from which to conclude that the defendant, in fact, shot John Celestine. The defendant admitted under oath that the gun in question was his and that for whatever reason it did fire and John Celestine fell to the ground, mortally wounded. The defendant, as well as other witnesses, testified that he did not hear anything else like a gunshot before he fired his gun. The testimony further tended to show that the defendant was shot in the hand as he fled the scene.
It is true that it would have been much clearer if the officer or the Assistant Coroner had removed the projectile and positively identified it. However, the fact that they did not do this only affects the weight which the jury would give this demonstrative evidence. Additionally, this *360 exhibit was merely corroborative of other evidence which appears to establish that the defendant did in fact shoot John Celestine with the defendant's own gun.
In State v. Davis, supra, at 438, this court held:
"To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Paster, 373 So.2d 170 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). A continuous chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized by the officer. State v. Guzman, 362 So.2d 744 (La.1978). State v. Godeaux, 378 So.2d 941, (La. 1980)." [Emphasis added].
See also State v. Tonubbee, 420 So.2d 126 (La.1982).
For the reasons stated above this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
By this assignment the defendant argues that the trial court erred in not granting a new trial on the basis of the prosecutor's comments in her closing and rebuttal arguments concerning a defense witness, Mr. Leland Ryan. The defendant argues that it was reversible error to allow the prosecutor to comment on the witness' failure to come forward with his testimony before trial.
Under La.C.Cr.P. art. 774, the "state's rebuttal shall be confined to answering the argument of the defendant." This is precisely what the prosecutor did on closing and rebuttal. The defendant had argued that he fired his gun accidentally when he was shot in the hand. Mr. Ryan testified for the defendant to the effect that he heard a shot fired before the fatal shot that killed John Celestine was fired. The prosecutor was simply questioning the credibility of Mr. Ryan's testimony which was at odds with all of the witnesses who testified for the state. There can be no doubt that "prosecutorial argument on the credibility of witnesses is proper." State v. Procell, 365 So.2d 484 (La.1978), certiorari denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). See also State v. West, 319 So.2d 901 (La.1975); and State v. Sayles, 395 So.2d 695 (La.1981). The prosecutor was merely questioning the believability of a witness who intentionally waited to come forth with testimony which appears to be totally contradictory to all of the state's witnesses. For the reasons as stated above, this assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 3 AND 4:
Through this third assignment of error the defendant contends that the trial court erred in not allowing the defendant to object on the record to the jury charge. Defendant argues that his objection was made known to the judge and thus preserved for appeal. In connection with this assignment, defendant argues by assignment number four that the trial court erred in refusing to instruct the jury as to negligent homicide.
The Louisiana Code of Criminal Procedure, Article 801, provides in pertinent part:
"A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury."
The defendant argues that once he has submitted a proposed charge to the judge he need not thereafter object if the *361 judge rejects his proposed charge. Defendant cites four cases in support of this argument; State v. Beard, 312 So.2d 278 (La. 1975); State v. Williams, 366 So.2d 1365 (La.1979); State v. Jefferson, 379 So.2d 1389 (La.1980); and State v. Mack, 403 So.2d 8 (La.1981). It is important to note that State v. Mack, supra, expressly overruled Beard, Williams, and Jefferson, to the extent that they were in conflict with its holding. In Mack, the court stated:
"that an objection to the judge's general charge is properly preserved if made immediately after the jury is retired, particularly if that is the first opportunity to object."
See also State v. Tompkins, 403 So.2d 644 (La.1981); and State v. Marmillion, 339 So.2d 788 (La.1976). The defendant's objection to the trial court's refusal to give his requested charge on negligent homicide could have been made either by "interrupting the judge during the charge or at the conclusion of his giving it." State v. Henry, 352 So.2d 643 (La.1977). But the court, by its own admission, did not allow the defendant an opportunity to object on the record. Nevertheless, the defendant made it clear to the trial judge, in chambers, that he desired the jury be charged as to negligent homicide as well as manslaughter. The court informed him that it did not intend to add this charge to its instructions. The defendant did bring the alleged error to the trial judge's attention at a time when the judge could have still cured the alleged error. Thus, it appears that defendant did preserve the issue for appeal. However, there appears to have been no error in the trial judge's refusal to charge the jury as to negligent homicide.
The defendant was indicted and charged with manslaughter. Under La.C.Cr.P. article 814,
"the only responsive verdicts which may be rendered where the indictment charges [manslaughter] are: Guilty and Not Guilty."
It seems clear that negligent homicide is not a responsive verdict to a charge of manslaughter. Nevertheless, the defendant argues that, based on the evidence adduced at trial, the court should have given this special charge requested by the defendant.
It is well settled that a requested special charge
"shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and...." [Emphasis added].
State v. Smith, 414 So.2d 1237 (La.1982). See also State v. Masse, 365 So.2d 1319 (La.1979); State v. Teleford, 384 So.2d 347 (La.1980); State v. Lane, 414 So.2d 1223 (La.1982); and State v. Toomer, 395 So.2d 1320 (La.1981).
Defendant is correct in his assertion that the judge "is required to cover every phase of the case supported by the evidence whether or not accepted by him as true." State v. Mart, 352 So.2d 678 (La.1977). State v. Toomer, supra, State v. Lane, supra. The defendant contends that because he argued that the killing was a result of negligence or accident that the instruction as to negligent homicide was pertinent. However, the evidence does not support that argument.
In State v. Toomer, supra, the defendant charged with first degree murder, requested a special charge to the jury as to negligent homicide. The court, in upholding the trial judge's refusal to so instruct the jury, said:
"It does not appear that any rational juror could have inferred that the killing was accidental. The defendant did not present any evidence to suggest, an accident or negligence."
Toomer, supra.
The defendant herein also failed to present any evidence to support his claim of accident or negligence. The vast majority of the evidence produced and testimony given strongly indicates that in response to his own violent acts, defendant was shot in the hand as he fled the scene. Even the defendant's own testimony does not support his claim of negligent homicide. Moreover, the court instructed the jury:

*362 "Should you find that the death of John Celestine was caused accidentally or without the specific intent by Willie Adams to kill or inflict great bodily harm you must then return a verdict of not guilty."
Thus, if the jury were persuaded by the evidence that this shooting was accidental, they were instructed to find the defendant not guilty. It therefore appears that the requested instruction on negligent homicide was not a responsive verdict and was not pertinent given the evidence presented. For the reasons stated assignments numbers three and four are without merit.
ASSIGNMENT OF ERROR NO. 5:
By this assignment of error the defendant argues that the trial court did not properly instruct the jury as to the elements of the crime charged. Conspicuously absent in defendant's brief is any hint of exactly which element of the crime charged was missing. It appears from defendant's brief that he is not looking at the judge's instructions as a whole.
"This court has consistently held that a jury charge must be considered as a whole, and particular expressions in a charge must be construed in context of the entire charge, and it has declined to reverse a conviction on the ground of an erroneous charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Dardar, 353 So.2d 713 (La.1977); State v. George, 346 So.2d 694 (La.1977)."
State v. Motten, 395 So.2d 1337 (La.1981). Also, U.S. v. Marcello, 537 F.Supp. 1364 (D.C.La.1982). The trial judge instructed the jury that the defendant was charged with manslaughter. He charged the jury that manslaughter "is the killing of a human being when the defendant has a specific intent to kill or inflict great bodily harm." The killing is committed "in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." The judge then instructed the jury as to the meaning of specific intent. He told the jury that the state must prove all of these elements beyond a reasonable doubt. The state must also prove that the crime was committed in Calcasieu Parish, on or about the date in the indictment, and that the killing was not done in self-defense. Thus the jury was made aware that in order to convict Willie Adams of manslaughter they must find that he killed John Celestine; that he specifically intended to kill John Celestine or to inflict great bodily harm upon him; that the killing was done in sudden passion or heat of blood sufficient to deprive an average person of self-control; that it was not done in self-defense or by accident; and that it happened in Calcasieu Parish on the date listed in the indictment.
It does not appear from the record nor from appellant's brief that these instructions were erroneous or incomplete. There does not appear to be any element of the crime charged which the state had to prove that was not set out to the jury. As the defendant alleges no specific element absent from the jury charges it is difficult to establish that defendant suffered any prejudice from this alleged error. For the reasons stated above this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 6:
Defendant argues that there was error in the court below because the attorney for the state repeatedly requested bench conferences to discuss with the Court whether or not she had presented sufficient evidence to accomplish some point which she was attempting to prove.
Bench conferences between the trial judge and attorneys are not a matter of record and it is therefore impossible to speculate on what transpired during such conferences. But it is immaterial as to what was said during these conferences so long as no comment is made by the judge in the presence of the jury so as to constitute prejudicial remarks.
Louisiana Code of Criminal Procedure, Article 772 provides:

*363 "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion to what has been proved, not proved, or refuted."
The record clearly reflects, and by defendant's own admission it is clear, that the judge made no comment in the presence of the jury which could possibly have constituted a violation of La.C.Cr.P. article 772. The defendant makes no showing of how these conferences were prejudicial to him or how such conferences resulted in his not having a fair trial. The court appeared to be equally receptive to defense counsel's requests for conferences and the fact that the prosecuting attorney requested more bench conferences than the defense attorney does not in itself make for an unfair trial nor is it necessarily prejudicial to the defendant. It appears that the jury had no idea of what was transpiring during these bench conferences.
For the reasons stated above, this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 7:
By this assignment the defendant argues that the court should have granted a mistrial based on the misconduct of one of the jurors, Mr. George Washington. Mr. Washington allegedly told the husband of another juror, Mrs. Hebert, in her presence, that the defendant was "guilty as sin."
Testimony elicited at the hearing on the motion for a new trial indicates that juror Washington did make the above statement in the presence of another juror prior to the state resting its case and prior to the defendant putting on any evidence. It should be noted that this occurred just before the state completed its case in chief. From the defendant's argument it appears that he is not so much questioning the effect of this statement on juror Hebert as he is questioning the failure of juror Washington to refrain from formulating an opinion or discussing the case until all evidence had been presented.
Under statutory law, no juror may testify to his own or to a fellow juror's misconduct or give evidence to impeach any verdict found by the jury of which he is a member. La.R.S. 15:470. State v. Copeland, 419 So.2d 899 (La.1982).
"Nevertheless, it is now clear that the statute must yield and that our courts are required to take evidence upon well pleaded allegations of prejudicial juror misconduct violating an accused's constitutional right to due process or to trial by a fair and impartial jury and to set aside the verdict and order a new trial upon a showing that a constitutional violation occurred and that a reasonable possibility of prejudice exists."

State v. Graham, 422 So.2d 123 (La.1982). See also Durr v. Cook, 589 F.2d 891 (5th Cir.1979); and State v. Sinegal, 393 So.2d 684 (La.1981).
The defendant does not allege that juror Washington had any personal prejudice which caused him to believe that defendant was guilty. Even if it were learned that juror Washington had personal prejudice which he did not put aside during deliberations the verdict could not be disturbed. U.S. v. Duzac, 622 F.2d 911, certiorari denied, 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (5th Cir.1980). There is no indication that juror Washington did not or might not change his mind upon hearing defendant's evidence rebutting what the state had shown. He simply expressed that at that point in the proceedings he felt the state had put on enough evidence to prove beyond a reasonable doubt that the defendant was guilty as charged. There is no indication that juror Washington did not objectively hear defendant's evidence and decide whether it outweighed what the state had established. Also, it is not at all clear that Mrs. Hebert was influenced in any way by Mr. Washington's remarks. Thus, it appears that the defendant has failed to establish a "reasonable possibility of prejudice." Also, it is not clear that there was a constitutional violation committed when juror Washington *364 made this comment. It may well be that juror Washington merely felt that the state had met its burden of proof and that it was not likely that defendant would be able to refute the evidence presented. This does not mean that he or Mrs. Hebert might not change their opinion after the defense presented its case. Mrs. Hebert made no indications to her husband that Mr. Washington's comments influenced her in the least.
It would seem to be unfair to assume that juror Washington breached his duty as charged to not formulate an opinion as to guilt or innocence until all evidence had been presented. There appears to be no reason to assume that the comment reflected anything more than juror Washington's belief that the state had successfully met its burden of proof.
For the reasons stated above this assignment is without merit.
ASSIGNMENT OF ERROR NO. 8:
Defendant argues through this assignment that the trial court erred in not granting a new trial based on the discovery of new evidence. The "newly discovered evidence" consists of the eye-witness testimony of one Dewey Hickerson, who claims to have heard a shot fired immediately prior to the discharge of defendant's gun, a position consistent with the defendant's theory of the case.
The burden defendant must meet to obtain a new trial based on discovered evidence is twofold.
"First, he must demonstrate that the evidence was not discoverable before or during trial despite the exercise of reasonable diligence...."
State v. Coleman, 390 So.2d 865 (La.1980). See also State v. Quimby, 419 So.2d 951 (La.1982); State v. Chapman, 410 So.2d 689 (La.1982); State v. Motton, 395 So.2d 1337 (La.1981); and La.C.Cr.P. art. 851(3). There is nothing in the record which indicates that Mr. Hickerson could not have been discovered by due diligence on the part of the defendant. His address was 1100 Alice Street, Sulphur, Louisiana. This was practically at the spot where the crime occurred. Mr. Hickerson had given a taped statement in an interview with an investigator for defense counsel. Defendant makes no showing that this witness was not discoverable before or during the trial.
"Second, he must show that if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty. C.Cr.P. art. 851(3)."
State v. Coleman, supra.
The record reflects that Mr. Hickerson's testimony is merely cumulative. There is nothing new presented by his testimony. Furthermore, it does not appear from the record that his testimony might have changed the jury's verdict. According to the defendant's own testimony, when he arrived on the scene there was no one else present with a gun or knife or even a stick. The defendant's own witness, Leland Ryan, testified that there was no one else around with guns. Mr. Hickerson testified to the same information. According to Melvin Cesar, Ricky Armelin, Audrey Holmes, Herman Ryan, and Glenda Morrow, when John Celestine walked toward Willie Adams' car, he had nothing in his hands and had placed the chair he was holding back down upon the ground. In addition, Henry Harrison, Theresa Harrison, Ricky Armelin, Melvin Cesar, David Celestine, and Francis Celestine all testified that they heard one shot followed at various lengths of time by other shots. The testimony of these witnesses seemed to indicate quite clearly that the first shot was from Willie Adams' gun and that Willie was shot in the hand as he fled from the scene.
"The test to be applied in considering a motion for a new trial based upon newly discovered evidence is whether the new evidence is so material that it ought to produce a different result from the verdict rendered at trial."
State v. Simmons, 414 So.2d 705 (La.1982). Defendant has not met this test.
Moreover, it should be noted that:

*365 "The trial court has considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its ruling will be disturbed on appeal only when there is a clear showing of abuse of that discretion. State v. Spell, 399 So.2d 551 (La.1981)."
State v. Simmons, 414 So.2d 705 (La.1982). See also State v. Molinario, 400 So.2d 596 (La.1981); State v. Motton, 395 So.2d 1337 (La.1981).
From the abundance of eyewitness testimony and direct evidence produced by the State it is evident that the trial judge could easily have found that the testimony of this "newly discovered witness" would have little or no impact on the verdict. There is no abuse of discretion by the trial judge herein.
For the reasons stated above this assignment is without merit.
ASSIGNMENT OF ERROR NO. 9:
By this assignment the defendant contends that there was not sufficient evidence produced by the State from which the jury could find that the defendant had the requisite specific intent to kill or do great bodily harm to the victim. Defendant further contends that no reasonable trier of fact could have found, from the evidence presented, that the defendant was the aggressor or that he did not act in self-defense.
It is now well settled in the Louisiana jurisprudence that the:
"Due Process Clause of the Fourteenth Amendment requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process, and his conviction cannot stand, unless, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 [61 L.Ed.2d 560] (1979)."
State v. Graham, 422 So.2d 123 (La.1982).[1]
As to defendant's first contention concerning the issue of specific intent, the record simply does not support defendant's claim. The record is replete with eyewitness testimony that Willie Adams came to John Celestine's home armed with a gun. As the defendant stood next to his automobile, he held the gun by his side. His attention was focused on John Celestine. By defendant's own admission he knew that the victim was completely unarmed. The victim had no gun, no knife, no stick, nothing at all.
The defendant also admits that he did in fact fire his weapon directly at the victim's head. Eyewitness testimony corroborated this fact. It may well be that when Willie Adams left his home he had no intention of killing or inflicting great bodily harm on John Celestine or anyone else. But the facts demonstrate that he did take his gun along with him and he did position that gun in his hand so as to be able to use it. When the time came, he fired the fatal shot directly at the victim's head and thereby caused the death of John Celestine. These facts alone seem enough for the jury to have concluded that the defendant at least meant to inflict great bodily harm.
"Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from circumstances of transactions and actions of the accused."
La.R.S. 15:445; State v. Fuller, 414 So.2d 306 (La.1982). See also State v. McDermitt, 406 So.2d 195 (La.1981); In Interest of Franklin, 399 So.2d 671 (La.App. 1st Cir.1981). Additionally, specific intent is an ultimate legal conclusion to be resolved by the factfinder. State v. Graham, supra. The jury could and did conclude from the facts presented to it that defendant *366 acted with the specific intent to do great bodily harm.
Defendant's second premise is that no reasonable trier of fact could have found from the evidence presented that the defendant was the aggressor or that he did not act in self-defense.
The defendant is correct in his assertion that the burden of proof lies with the State to show that the defendant did not act in self-defense.
"Defendant does not bear the burden of proving that he or she acted in self-defense, but the state has to prove beyond a reasonable doubt that the homicide was committed feloniously and not in self-defense."
State v. Carter, 227 La. 820, 80 So.2d 420 (1955). However, the State did put forth evidence to show that the defendant did not act in self-defense. The defendant as well as numerous eyewitnesses, testified that the victim was completely unarmed. There is no evidence in the record which tends to show that the defendant feared for his life in the encounter he had with the victim or which justified his use of deadly force. The evidence put on by the State seems more than adequate to prove that the defendant did not act in self-defense. He came to the victim's house on his own accord, perhaps to help his girlfriend, armed with a loaded gun. It appears that defendant exchanged heated words with the victim and then, upon hearing that defendant had a gun, perhaps to protect himself or his family, the unarmed victim attempted to stop the defendant from using that gun. Willie Adams had a loaded gun in his possession which he chose to use, thus resulting in the death of an unarmed man. There was sufficient evidence from which the jury could conclude that the defendant did not act in self-defense or in the defense of others.
For the reasons stated, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 10:
Defendant argues through this assignment that the trial court erred in its instructions to the jury regarding the possible sentences defendant would be subject to if convicted. The trial judge merely mentioned that defendant could be sentenced up to 21 years if found guilty. The judge was not attempting to instruct the jury on sentencing, as sentencing in this case is completely outside the scope of the jury's duty.
Under the Louisiana Code of Criminal Procedure, Article 802:
"The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence."
It is well settled in Louisiana jurisprudence that sentencing simply is not within the province of the jury.
State v. Blackwell, 298 So.2d 798 (La. 1973) held that:
"in those jurisdictions where the jury determines only guilt or innocence and the court imposes the penalty, as is the case in Louisiana, it is not error for the court to refuse to instruct the jury on possible penalties. The general view is that penalty is simply of no concern to the jury."
See also State v. Unzueta, 337 So.2d 1102 (La.1976); State v. Carthan, 377 So.2d 308 (La.1979); and State v. Dawson, 392 So.2d 445 (La.1980). It should be noted that the Louisiana Supreme Court, in State v. Washington, held:
"When the penalty imposed by the statute is a mandatory one the trial judge must inform the jury of the penalty on request of the defendant, and must permit the defense to argue the penalty to the jury."
State v. Washington, 367 So.2d 4 (La. 1978). The manslaughter statute under which defendant was indicted does not impose a mandatory sentence. However, it appears from the sentence handed down *367 that the trial judge sentenced the defendant under an enhancement statute, namely La.C.Cr.P. art. 893.1 which does require a mandatory five year sentence without benefit of probation, parole or suspension of sentence. It is important to note that the defendant did not request that the judge instruct the jury on the mandatorily imposed enhancement provisions nor did the defendant raise any objection to the judge's charges concerning the penalty which might be imposed.
Additionally, as sentencing is of no concern to the jury it is difficult to see how failing to inform the jury constitutes reversible error. The jury's duty was to determine guilt or innocence. The amount of time which defendant might or might not serve seems irrelevant to the determination of guilty or innocence. The jury was made aware that the defendant could be sentenced to a maximum term of 21 years in prison. It is not clear that defendant suffered any prejudice because the judge did not tell the jury that under the firearms enhancement statute the defendant would have to serve a mandatory five year sentence if convicted of the crime charged. It would appear that the instructions given to the jury regarding possible imprisonment at hard labor for up to 21 years sufficiently impressed the jurors with the seriousness of the sentence that defendant could receive if found guilty.
For the reasons stated above this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 11:
By this assignment it is the defendant's contention that the sentence imposed of five years at hard labor without benefit of probation, parole, or suspension of sentence is excessive.[2]
In State v. Sepulvado, 367 So.2d 762 (La.1979), the Louisiana Supreme Court decided that the imposition of a sentence even though within the statutory limits may be unconstitutionally excessive in violation of Article 1, Section 20 of the Louisiana Constitution of 1974. A sentence has been determined to be excessive punishment when the penalty is so disproportionate to the crime as to shock the senses of justice or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983); State v. Reed, 409 So.2d 266 (La.1982). However, due to the trial judge's unique advantage of viewing subjective factors not available from the appeal record he is given a wide discretion in the imposition of sentences within statutory limits, and a sentence imposed by him should not be deemed as excessive in the absence of manifest abuse of his discretion. Sepulvado and Goodman, supra; State v. Howard, 414 So.2d 1210 (La.1982); State v. Bradley, 414 So.2d 724 (La.1982).
We are unable to find any manifest abuse in this case. The sentence was imposed following a jury determination of guilt of a most serious crime. Having found no abuse of discretion we will not disturb this sentence on appeal.
ASSIGNMENT OF ERROR NO. 12:
By this assignment the defendant alleges that the provisions of Article 893.1[3] of the Louisiana Code of Criminal Procedure are *368 unconstitutional. This question appears to be res nova, i.e., we are unable to find any cases at the Appellate or Supreme Court level in Louisiana which directly address this question. However, as article 893.1 appears to be an enhanced penalty provision it may be analogized to the state's multiple habitual offender laws, La.R.S. 15:529.1.
The defendant maintains that La. C.Cr.P. article 893.1 is unconstitutional for four different reasons. First, the defendant argues that article 893.1 is unconstitutional because it takes away the discretion of the trial judge in sentencing a person convicted of manslaughter when a firearm was used.[4] Article 893.1 simply limits the judge's discretion by mandating the imposition of a sentence of not less than five years; it does not divest the trial judge of sentencing discretion, but rather mandates sentence terms. The Louisiana Supreme Court has expressly rejected this same argument regarding the Habitual Offender Statute, La.R.S. 15:529.1. That statute, just as La.C.Cr.P. article 893.1, imposes a minimum mandatory sentence which limits the judge's discretion in sentencing. Nevertheless, the court has held that the habitual offender statute does not deprive the judge of control over sentencing. State v. Ugarte, 176 La. 54, 145 So. 266 (1933); State v. Badon, 338 So.2d 665 (La. 1976).
Next, the defendant argues that article 893.1 is unconstitutional because it denies the defendant equal protection of the law in that it applies to one class of persons while not applying to other classes of persons. It does not appear that felons who commit crimes while armed with a firearm are a protected "class of persons". The fact that this provision does not affect those who use other weapons is of no significance. The legislature recognized the problem posed, and the number of deaths which have resulted from, the use of a firearm in the commission of a crime. It is well within their province to enact a law which is aimed specifically at alleviating this problem.
Defendant also argues that article 893.1 is unconstitutional because it "regulates the practice of district courts in similar cases of manslaughter where a firearm is not used" and thus violates Article 3, § 12(3) of the Louisiana Constitution (1974).
Article 3, § 12(3) provides:
"Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
Concerning any civil or criminal actions, including changing the venue in civil or criminal cases, or regulating the practice or jurisdiction of any court, or changing the rules of evidence in any judicial proceeding or inquiry before courts...."
Article 893.1 does not contravene Article 3, § 12(3) of the State Constitution. The article has no relation to the regulation of district court practices. It merely provides a mandatory sentence as an enhanced penalty for crimes committed involving the use of a firearm. Article 893.1 does not regulate the practice of any court but merely limits the discretion of the trial judge in sentencing.
Lastly, defendant argues that C.Cr.P. art. 893.1 contravenes Article 3, § 12(10) of the State Constitution in that it defines a crime. Article 893.1 does not define a crime. Article 893.1 imposes a mandatory sentence when a firearm is involved in the commission of a crime, just as the Habitual Offender Act imposes mandatory sentences for repeat offenders. The State Supreme Court expressly held:
"The constitutionality of La.R.S. 15:529.1 has been upheld by this court several times. It is well established that the law does not make it a crime to be a multiple offender; it merely prescribes an enhanced penalty for multiple offenders. As an enhancement-of-penalty *369 provision, the statute does not punish a status, nor does it impose cruel and unusual punishment. See State ex rel. Williams v. Henderson, 289 So.2d 74 (La. 1974); State v. Vale, 252 La. 1056, 215 So.2d 811 (1968), rev'd on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Guidry, 169 La. 215, 124 So. 832 (1929). See also Price v. Allgood, 369 F.2d 376 (5th Cir.1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967)." [Emphasis added.]
State v. Badon, 338 So.2d 665 (La.1976). See also State v. Bullock, 329 So.2d 733 (La.1976); State v. Hayes, 412 So.2d 1323 (La.1982); and State v. Overton, 337 So.2d 1201 (La.1976).
Thus it appears that article 893.1 likewise does not "create a new or separate offense" but "merely provides for the imposition of an increased sentence." State v. Hayes, supra.
For the reasons stated above this assignment is without merit.
ASSIGNMENT OF ERROR NO. 13:
By this assignment the defendant argues that the court erred in not granting defendant a new trial for the reasons listed in the motion for new trial. All of these reasons are addressed herein under the specific assignments of error discussed above. For the reasons articulated in the foregoing assignments of error, this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 14:
The defendant argues by this assignment that the ends of justice would be served by the reversal of the conviction of the defendant.
"The last ground urged for a new trial is that the ends of justice would be served thereby. La.C.Cr.P. art. 851(5). This is a ground upon which the trial judge may grant a new trial. It presents nothing for this Court's appellate review. State v. Matthews, 354 So.2d 552 (La.1978)."
State v. Toomer, 395 So.2d 1320 at 1328 (La.1981). Additionally, an appellate court is not required to reverse a trial court decision unless:
"the trial court's error constitutes a substantial violation of the constitutional rights or the accused has otherwise been prejudiced."
State v. Adams, 394 So.2d 1204 (La.1981). The defendant has failed to establish any violation of his constitutional rights nor has he established that he was prejudiced by any of the trial court's rulings. Consequently, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 15:
Defendant's assignment of error No. 15 is of a catchall type. By this assignment of error defense counsel maintains that if any of the other allegations are denied for want of his action, then defendant should be entitled to a reversal of the conviction on the grounds of incompetent counsel.
At this point it should be noted that defense counsel on appeal also represented the defendant at the trial. Thus, defense counsel asks us to declare his own representation incompetent in order to effectively coerce a reversal of defendant's conviction.
It is a well settled proposition of law that an accused has a right to effective counsel. See La. Const. Art. 1, Sec. 13 (1974); La.C.Cr.P. Art. 511. But to extend that right to encompass behavior of this type defies reason. Defense counsel, although unsuccessful, has adeptly argued fourteen assignments of error. Further, the record indicates that his performance at the trial level was more than adequate. He now asks us to reverse a conviction based upon that representation.
We consider that appellant's rather nebulous request on this assignment extends the bounds of proper advocacy before the judicial system. Assignment of Error No. 15 has no merit, and in fact it is regrettable that we have to lend it dignity by ruling on it.
For the above and foregoing reasons defendant's conviction and sentence for the crime of manslaughter are affirmed.
AFFIRMED.
NOTES
[1] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second-guessers" of the triers of fact. See State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir. 1983), concurring opinion, and cases cited therein.
[2] The author of this opinion is compelled to state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 529; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir. 1983), concurring opinion at 1339, writ denied (La. June 10, 1983). See also State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169.
[3] La.C.Cr.P. art. 893.1 provides, in relevant part:

"When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
* * * * * *
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole."
[4] The penal clause of La.R.S. 14:31 states:

"Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years."