414 So.2d 1223 (1982)
STATE of Louisiana
v.
Charles W. LANE.
No. 81-KA-2208.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.
*1224 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Philip J. Boudousque, William C. Credo, III, Asst. Dist. Attys., for plaintiff-appellee.
William Noland, New Orleans, for defendant-appellant.
FRED S. BOWES, Justice Pro Tem.[*]
The defendant, Charles W. Lane, was convicted by a jury of first degree murder, in violation of La.R.S. 14:30.[1] He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. On appeal, defendant urges nine assignments of error. Assignment of Error Number 5 was neither briefed nor argued, therefore it is considered abandoned. State v. Blanton, 325 So.2d 586 (La.1976).
*1225 FACTS:
On September 28, 1979, the defendant, Charles W. Lane, Frances Arwood, the victim, and Robert Sawyer, were at Cynthia Shano's mother's house in Gretna, Louisiana. Frances Arwood was Cynthia Shano's sister-in-law, and was baby-sitting with Cynthia's two small children, who were also present. Robert Sawyer lived at the residence with Ms. Shano.
When Shano returned home at approximately 12:30 p. m., Sawyer, the defendant, Lane, and Arwood were arguing. As the arguing continued, Sawyer pushed Arwood's head back against a sofa bed and hit her in the face. At this point, the defendant also hit Arwood in the face with his fist. Sawyer then started hitting her in the chest. As Arwood tried to get up from the bed, Sawyer kicked her in the chest and told her to get up and go wash herself.
After Shano had gone into the bedroom with the children, she heard the defendant hitting Arwood. When she came out of the bedroom, Shano observed Sawyer drag Arwood by the hair into the bathroom. When Arwood would not get into the bathtub, Sawyer kicked her in the chest, knocking her into the tub, and hitting her head against the wall. The defendant, Lane, then pulled Arwood out of the bathtub and undressed her. The bathroom door was then closed for about twenty minutes.
While the defendant was in the bathroom alone with Arwood, Sawyer boiled hot water. He went into the bathroom and poured detergent over the victim's head and then poured the hot water on her. The defendant started ducking the victim's head under the water and punching her with his fists. Sawyer and the defendant then pulled Arwood out of the bathtub. When the victim resisted by hitting Sawyer, he screamed and kicked her in the chest. Arwood's head hit either the windowsill or the bathtub and rendered her unconscious. The defendant and Sawyer then carried the victim into the living room and dropped her face down on the floor. Lane started kicking Arwood in the rib area, while Sawyer walked on her back. After Sawyer beat the victim with a leather belt, the two men put Arwood on a sofa bed. Shano, who had been screaming for them to stop, covered the victim's body with a blanket.
While Shano was in the bathroom, after being nauseated, she heard Sawyer state to the defendant, "I'll show you how cruel I can be." When Shano returned from the bathroom, she observed smoke coming from the victim's face and that the victim's legs were open. The defendant was laughing and informed her that his sexual organ was burned because he was having sexual intercourse with the victim while Sawyer set them on fire.
After some of Shano's relatives arrived at the house, the victim was transported to West Jefferson Hospital. Arwood, who arrived at the hospital in a coma, had third degree burns all over her body, lacerations on her chin, and swelling of the face and neck. She died on November 21, 1979, approximately two months later. The cause of death was significant brain damage from a blunt head injury and extensive burns over most of her body.
The defendant and Sawyer were arrested and advised of their Miranda rights when police officers and medical units arrived on the scene. Lane signed a "rights of arrestee" form and gave a statement admitting that he was present but stating that he only tried to assist the victim.
On November 21, 1979, Lane was rebooked and formally charged with the first degree murder of Frances Arwood. At that time, the defendant admitted to having sexual intercourse with the victim while she was in the bathtub, but denied having anything to do with beating her.
Assignment of Error Number 1
By this assignment, defendant contends that the trial court erred in denying his motion to suppress oral inculpatory statements made by him when he was in jail. Defense counsel argued that the statement was elicited during custodial interrogation and required full Miranda warnings.
The statements in question were made to Deputy Gerald Self of the Jefferson Parish *1226 Sheriff's office on November 21, 1979, when the defendant was being rebooked for first degree murder. The defendant inquired as to why he was brought into the intake booking area. Deputy Self explained to the defendant that he was to be rebooked for first degree murder. At this time, the defendant asked whether the girl had died and Self responded, "Yes, she did." The defendant then stated, "Well, let me tell you what happened." Deputy Self repeatedly informed the defendant that he did not want him to say anything.
The defendant insisted and stated that he wanted to explain what happened. According to Deputy Self's testimony, the defendant stated that, "he wanted somebody to understand that he did not do anything to the girl, as far as hitting her, and that Mr. Sawyer did it all." The defendant then stated, "All I did was top her in the bathtub." Self then asked, "What do you mean by topping herdid you have sex with her?" The defendant responded, "Yes." In response to questions by Deputy Self, the defendant gave several more statements without being advised of his Miranda rights.
The trial judge ruled that the first part of the statement was freely and voluntarily given. He also ruled that any statements beyond the defendant's explanation of "topping" would be inadmissible. So the issue here is whether Deputy Self's first question constituted custodial interrogation in violation of the defendant's Miranda rights.
In State v. Robinson, 384 So.2d 332 (La. 1980), this court held that spontaneous and voluntary statements not given as a result of police interrogation or compelling influences are admissible in evidence without Miranda warnings, even though the defendant is in custody. In this case, there was no interrogation going on. On the contrary, Deputy Self tried to prohibit any conversation with the defendant. The statement by the defendant that he "topped" the victim in the bathtub was clearly spontaneous and voluntary and was not given as a result of compelling influences. State v. Robinson, supra. Detective Self was merely trying to clarify the voluntary statement made by the defendant. In our opinion, the operative colloquy between the detective and the defendant did not constitute custodial interrogation in violation of Miranda.
This assignment is without merit.
Assignment of Error Number 2
By this assignment, defendant contends that the trial court erred in denying his motion for a continuance on June 20, 1980, three days prior to the date set for trial. The trial judge denied the motion. On the morning of trial, defense counsel again requested a continuance. The State opposed the motion and it was denied by the trial judge. Defendant's argument is that he was prejudiced by the trial court's denial of his motion for a continuance because he was unable to obtain crucial evidence regarding the cause of death from the treating physician.
The record reflects that defense counsel had at least four months to prepare for trial of this case. During the May 29, 1980 hearing on the defendant's motion for inspection and discovery defense counsel admitted that he had complete access to the district attorney's file, except for statements made by State witnesses. This clearly gave defense counsel ample opportunity to discover the cause of the victim's death from the treating physician.
Defendant additionally argues that he was prejudiced by the prosecutor's failure to make available statements made by State witnesses. This court has consistently held that criminal discovery does not enable a defendant to discover the State's evidence. State v. Hennigan, 404 So.2d 222 (La.1981); State v. May, 339 So.2d 764 (La. 1976). Since the defendant was not entitled to the names of the State witnesses, he cannot urge that he was prejudiced by the State's nondisclosure of this information. We feel the trial judge was correct in denying the defendant's continuance.
This assignment is without merit.
Assignment of Error Number 3
By this assignment, defendant contends that the trial court erred in permitting the *1227 introduction of prior consistent statements of the State's key witness. He argues that the State was allowed to corroborate the witness' testimony prior to the impeachment of the witness.
During the direct examination of Cynthia Shano, the prosecutor requested that the witness' signed statement given to the officers on the afternoon of the offense be admitted into evidence. Defense counsel stated that he had no objection to the introduction of the statement. The prosecutor then requested that Shano read the statement to the jury. At this point, defense counsel did not object but stated that the prosecutor was trying to impeach his own witness. The prosecutor responded that he only wanted to show that the witness' testimony was essentially the same as it was two hours after the incident. The trial court permitted the witness to read the statement to the jury. Defendant now argues that the State introduced the witness' prior consistent statement in an attempt to bolster her credibility.
Defense counsel stated that he had no objection to introduction of the witness' statement to police officers and he did not object to her reading this statement to the jury. This court has consistently held that an objection not contemporaneously raised in the lower court cannot be raised on appeal. State v. Baylis, 388 So.2d 713 (La.1980). Additionally, defense counsel's only statement at trial was that the prosecutor was attempting to impeach his own witness. Defendant now argues that the State prematurely introduced the witness' prior consistent statement to bolster her credibility. La.R.S. 15:484. A new basis for an objection cannot be raised for the first time on appeal. State v. Motton, 395 So.2d 1337 (La.1981), State v. Johnson, 389 So.2d 372 (La.1980). Therefore, nothing is presented for our review.
In any event, the defendant has not alleged or shown that he was prejudiced by the trial court's ruling and no prejudice appears to exist. State v. Mead, 377 So.2d 79 (La.1979). Accordingly, this assignment is without merit.
Assignment of Error Number 4
By this assignment, defendant contends that the trial court erred in introducing gruesome photographs of the victim into evidence. He argues that the photographs should have been excluded because of their lack of probative value and their prejudicial effect on the jury.
The evidence forming the basis of defendant's argument is four color photographs of the victim's face and body after she had been burned and beaten. While the photographs are unpleasant, they are not so gruesome that they would overwhelm reason. The photographs corroborated the testimony of the examining physicians, the pathologist, and Cynthia Shano. They also established the identity of the victim and tended to show the use of unnecessary force and violence by the perpetrators. In our opinion, the probative value of the photographs certainly outweighed any possible prejudice that may have resulted from their display to the jury. State v. Lindsey, 404 So.2d 466 (La.1981); State v. Myles, 389 So.2d 12 (La.1980). Therefore, the trial court did not abuse its discretion in admitting the photographs into evidence.
This assignment lacks merit.
Assignment of Error Number
By this assignment, defendant contends that the trial court erred in conducting a hearing on the removal of a juror outside the presence of the defendant.
During the trial, the judge held a hearing in chambers in response to a note received by one of the jurors, Sam Hebert, stating that he was at one time acquainted with the State's witness, Cynthia Shano. After questioning the juror, defense counsel requested that he have a minute to confer with the defendant and allow him to make the decision on whether the juror should be excused. The court granted the motion. Shortly thereafter, defense counsel returned and advised the court that he was satisfied with the make-up of the jury.
Defense counsel argues that La.C.Cr.P. Art. 831 requires that the defendant be *1228 present for such a hearing and that his absence invalidated the entire proceeding. At no time, however, did defense counsel make an objection to the defendant's absence during the hearing. As pointed out earlier herein, this court has consistently held that an objection not contemporaneously raised in the lower court cannot be raised on appeal. State v. Lawson. Therefore, nothing is presented for us to consider.
In any event, defense counsel immediately informed the defendant of the juror's note and of the hearing. From the record, it appears the defendant and defense counsel made the ultimate decision to allow the juror to hear the case.
Therefore, this assignment lacks merit.
Assignments of Error Numbers 7 and 8
By these assignments, defendant contends that the trial court erred in failing to give one of his requested jury charges. The defendant requested that the jury be read the definition of negligent homicide.
La.C.Cr.P. Art. 802 requires that the judge charge the jury as to the law applicable to the case. State v. Clement, 368 So.2d 1037 (La.1979); State v. Marse, 365 So.2d 1319 (La.1978). Special requested jury charges are governed by La.C.Cr.P. Art. 807, which provides, in part, that a special charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly pertinent and correct. State v. Telford, 384 So.2d 347 (La.1980).
A review of the facts adduced during the trial of this case indicate that the defendant's requested jury charge was not pertinent in this case. Therefore, the trial judge did not err in failing to instruct the jury as to negligent homicide.
This assignment is without merit.
Assignment of Error Number 9
By this assignment, defendant contends that the trial court erred in charging the jury as to the definition of aggravated arson. He argues that the jury was improperly left with the impression that they could find that the crime of aggravated arson had been committed as an aggravating circumstance to first degree murder.
Prior to the trial court's charge to the jury, defense counsel objected to the trial judge instructing the jury as to the definition of aggravated arson. He argued that the State had not established any evidence of the offense of aggravated arson. The judge overruled defense counsel's objection and read the definition of aggravated arson to the jury.
La.R.S. 14:51 defines aggravated arson as follows:
"Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life is endangered."
The record reflects testimony of lighter fluid being poured on the victim and on surrounding sheets and sofa bed. The victim was then set on fire, as was the bedding around her. Lighter fluid is an explosive substance. There is no doubt that these acts were intentional and it was surely foreseeable that Frances Arwood's life would be endangered by such acts. The trial judge reasoned that the fabric around the victim and the sofa bed could certainly be considered movables within the meaning of the statute. In our opinion, the trial judge was correct in charging the jury as to the definition of aggravated arson.
This assignment is without merit.
DECREE
For the above reasons, the defendant's conviction is affirmed.
NOTES
[*] Judges Fred S. Bowes and Nestor L. Currault, Jr. of the Court of Appeal, Fifth Circuit and Walter I. Lanier, Jr., of the Court of Appeal, First Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] A co-defendant, Robert Sawyer, was also tried and convicted on the same charge.