434 So.2d 1175 (1983)
STATE of Louisiana
v.
Andrew C. BOWMAN, Jr.
No. 82 KA 0921.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
*1176 Ossie B. Brown, Dist. Atty. by Ralph Roy, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Bryan E. Bush, Jr., Baton Rouge, for defendant-appellant.
Before EDWARDS, WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Defendant, Andrew Charles Bowman, Jr., was convicted of receiving and concealing stolen things in violation of LSA-R.S. 14:69. He was sentenced to four years, which sentence was suspended, and placed on active supervised probation for five years. He was sentenced to pick up trash for 60 days or to spend 60 days in jail. He was further sentenced to make restitution to the burglary victim whose goods he concealed, and to pay a fine of $500.00 or spend 30 days in jail. From this conviction, defendant has appealed. We affirm.
Defendant and his father operate a business in Baton Rouge known as The Gold Chest, which buys jewelry, gold coins, gold objects, and the like. On the morning of May 26, 1981, burglars entered the house of Mr. and Mrs. Frank Bova in Baton Rouge, and stole certain jewelry. That same morning Mr. Bova went to various gold-buying enterprises, told the shop personnel of the theft, and asked them to be on the lookout for the stolen items. Among other shops, Mr. Bova went to The Gold Chest, which was closed for repairs to an air conditioner, but which he was allowed to enter upon knocking. He described to Bowman, Jr. (the senior Bowman was a diabetic and was at home ill at the time) in a general way some of the jewelry, and told him his wife would bring him a detailed list at 1:00 that afternoon. About 12:00 Noon that same day, Wendell Holmes, accompanied by Bobby Matthews and Jay Turner, came to The Gold Chest, and offered to sell some items of gold jewelry, stating that Matthews was selling the jewelry for his grandmother. Bowman weighed each item of jewelry individually, to determine its value if melted down. One piece of jewelry was a gold coin, another a gold medallion, one a ring *1177 with diamonds, and there were several other pieces. Bowman told the men that he would give them the scrap value ($200.00) as a deposit, and take the items to his father, who lived in Denham Springs, to determine whether the items had numismatic or workmanship value in addition. He gave Holmes a receipt, and $200.00 as a deposit, and the men left. It developed that the items left at The Gold Chest by Holmes were some of the items stolen from the Bovas in the burglary.
About 1:00 that afternoon, Mrs. Bova came to The Gold Chest with a detailed written list of the jewelry stolen. She went over the list with Bowman, describing each item and drawing a picture of a gold medallion, which was the same item Bowman had only recently received from Holmes. Bowman did not indicate he had the jewelry in his possession, or indicate any flicker of recognition concerning the items listed, which comprised the items left by Holmes earlier that day and additional items not taken to The Gold Chest. Bowman testified that he failed to associate the items described by Mrs. Bova with the items left by Holmes.
Bowman slept in his trousers in his home that night, with the gold jewelry received from Holmes in his pants pocket. The next morning the police, who had been told that some of the stolen jewelry was at The Gold Chest, telephoned the senior Bowman and told him, falsely, that The Gold Chest had been burglarized. Young Bowman was notified by his father and the two drove by separate cars to The Gold Chest, where they were placed under arrest by police. Young Bowman signed a consent to search his trailer, which was in Denham Springs, and on the way there pulled out from his pants pocket the jewelry he was to have shown his father, which the police determined to be some of the stolen jewelry. Other stolen jewelry was found at the trailer of Holmes, Matthews, and Turner, which was searched under warrant.
At the trial, which took place without a jury, the defense having waived trial by jury, the policeman who executed the search warrant at Holmes', Matthews' and Turner's trailer, Jim Normand, who worked with the burglary division of the Baton Rouge City Police, testified that he had recovered some of the stolen items at Holmes', Matthews' and Turner's trailer, and over defense objection, those items were entered into evidence. At the trial, also, Morris Douget, of the Baton Rouge City Police, a prosecution witness, testified that young Bowman had frequently cooperated with law enforcement authorities, both before and after the time of the alleged offense, in attempting to apprehend individuals seeking to sell stolen items of jewelry. When the defense attempted to introduce similar testimony as to the cooperation of Bowman after the time of the alleged offense, the prosecution objected, the objection was sustained, and the testimony ruled inadmissible.
In his appeal, the defendant makes the following assignments of error:
1. The trial court erred in admitting evidence concerning the gold items recovered from Holmes', Matthews' and Turner's trailer, as these items, the prosecution admitted, never were at The Gold Chest, and hence these items were irrelevant.
2. The trial court erred in admitting the consent to search form signed by Bowman.
3. The trial court erred in not admitting evidence concerning Bowman's cooperation with police after the time of the alleged offense.
4. There is insufficient evidence to show intent, an essential element of the alleged crime.
Assignment of Error No. 2 is not briefed. The case was submitted without oral argument. Hence, Assignment of Error No. 2 is considered abandoned. State v. Vanderhoff, 415 So.2d 190 (La.1982); Rule 2-12.4, Uniform Rules, Courts of Appeal.

ASSIGNMENT OF ERROR NO. 1
The defense contends that evidence concerning the items of jewelry recovered from the trailer occupied by Holmes, Matthews and Turner was improperly admitted. These items were some of the items of jewelry stolen from Bova in the burglary of his house. However, they *1178 were never in Bowman's possession, and had no connection with Bowman. Evidence concerning these items was clearly of no possible relevance, and inadmissible. However, the case was tried before a judge without a jury. A judge by virtue of his training in the law is able to disregard irrelevant matters which are possibly prejudicial. State v. Crothers, 278 So.2d 12 (La. 1973), certiorari denied 414 U.S. 1096, 94 S.Ct. 731, 38 L.Ed.2d 555 (1973). Furthermore, the conduct of the trial demonstrates that the result was not prejudiced by the admission of evidence concerning these irrelevant items.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 3
The defense contends that admission of testimony concerning Bowman's cooperation with police after the time of the alleged offense should have been admitted as well as evidence of prior cooperation. As was aptly remarked by the State in brief before this Court, conduct after the alleged offense could be entirely self-serving, as one might cooperate in reporting stolen goods after having been arrested in an attempt to support an acquittal, and not out of inherent honesty.
However, as we have stated, Morris Douget of the Baton Rouge police, a State witness, under State questioning, testified that Bowman cooperated with the police with regard to stolen items after the commission of the alleged offense, as well as before. Thus, the entire matter of subsequent cooperation was opened up to the defense. However, as the case was tried by a judge alone, the defendant was not prejudiced, as the testimony of subsequent cooperation was already in, and any further testimony would have been merely cumulative. If this was error, it was harmless error.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
The defense contends that intent, an essential element of the crime of receiving or concealing stolen things, was not proved sufficiently to justify conviction.
The crime of receiving or concealing stolen goods is defined in LSA-R.S. 14:69 A, which reads as follows:
"Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses."
Thus, there are three elements to the crime; (1) intent, (2) possession, procuring, receiving, or concealing stolen goods, and (3) knowledge the goods were stolen.
In State v. Mathews, 375 So.2d 1165 (La. 1979) the Louisiana Supreme Court held that the decision in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when reviewing evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Here, intent has been proven beyond a reasonable doubt, as has knowledge. From the narration of facts given above, it is apparent that Bowman should have identified the items of jewelry that he had weighed item by item at 12:00 Noon when Holmes, Matthews and Turner were at The Gold Chest when these items were described item by item to him by Mrs. Bova at 1:00 p.m. the same day. Mrs. Bova even drew a sketch of a gold medallion which Bowman had then in his possession, having received that item from Holmes at 12:00 Noon that same day. The fact that Bowman did not produce these items, which were then at the shop, for Mrs. Bova's inspection at her 1:00 p.m. visit to The Gold Chest clearly indicates an intent to conceal these items. Furthermore, Holmes had sold stolen items to Bowman in the past, under circumstances that would tend to arouse suspicion.
Reviewing the evidence in the light most favorable to the prosecution, we cannot say a rational trier of fact could not find intent and knowledge beyond a reasonable doubt. *1179 The other element of the crime, receiving and concealing stolen goods, is not contested.
Assignment of Error No. 4 is without merit.
The conviction and sentence are affirmed.
AFFIRMED.
SHORTESS, Judge, concurring.
I concur in the result.
The serious issue here is whether the State excluded every reasonable hypothesis of innocence when it relied upon circumstantial evidence, as per the requirements set forth by our Supreme Court in the recent cases of State v. Ricks, 428 So.2d 794 (La.1983), and State v. Shapiro, 431 So.2d 372 (La.1983). In other words, did the State prove that the defendant knew or had good reason to believe that the jewelry he obtained from Wendell Holmes and others was the subject of a robbery or theft. My examination of this record convinces me that the State did exclude every reasonable hypothesis of innocence. Shortly after the burglary around 11:00 a.m. Frank Bova, the victim, went to defendant's place of business and generally described the stolen jewelry to him. Two pieces of jewelry were easily described. One was a gold ring with stones and had Bova's initials on the inside. The other was a custom-designed gold medallion which had the name of his business (Bova's Headmaster) and other details of a hairstylist shop described thereon. After Bova left defendant's business, within an hour or so, Holmes and others appeared and left the stolen jewelry, including the medallion and the ring, with defendant. At 1:00 p.m., Mrs. Bova went to the Gold Chest and gave defendant a handwritten list of items. While there, at defendant's suggestion, she even drew a sketch of the medallion. Defendant testified that he did not check the jewelry he had taken less than an hour earlier from Holmes to see if it was the same jewelry. While there may be some dispute as to whether or not the Bovas described the medallion in detail to defendant, there is no question that the medallion and ring, along with other items, were in defendant's pocket when he voluntarily gave same to the police.
In my opinion, no reasonable buyer of gold would have failed to notice the unique character of the medallion or Bova's initials inside the gold ring under the facts of this case. Defendant testified that he checked the jewelry close enough to separate the costume jewelry from the more valuable jewelry. It is inconceivable to me that he did not at the same time notice the victim's initials on the ring and the name on the medallion.
Accordingly, I concur.