562 So.2d 1 (1990)
STATE of Louisiana.
v.
James E. HERRIN a/k/a Festus Herrin.
No. KA89 0739.
Court of Appeal of Louisiana, First Circuit.
April 10, 1990.
Writ Denied September 6, 1990.
*3 J. Kevin McNary, Covington, for defendant-appellant.
Walter Reed, Dist. Atty., Covington and William R. Campbell, New Orleans, for the State.
Before LOTTINGER, CRAIN and LEBLANC, JJ.
LOTTINGER, Judge.
James E. "Festus" Herrin was charged in a six-count bill of information alleging various offenses against two victims, a five year old boy and a three year old girl. The bill charged defendant with three counts of aggravated oral sexual battery, La.R.S. 14:43.4; two counts of sexual battery, La. R.S. 14:43.1; and one count of cruelty to a juvenile, La.R.S. 14:93. He waived his right to a jury trial. The trial court found defendant guilty as charged on the three counts of aggravated oral sexual battery. The court also found defendant guilty as charged on one count of sexual battery and found him not guilty on the other count. The court granted defendant's motion for a directed verdict of acquittal on the charge of cruelty to a juvenile.
Defendant was sentenced as follows: The court imposed sentences of twenty years at hard labor for the two convictions of aggravated oral sexual battery committed on his male victim and ordered that the sentences be served concurrently. The court imposed a sentence of fifteen years at hard labor for the conviction of aggravated oral sexual battery committed upon his female victim and ordered that sentence to be served consecutively to the twenty year sentence. The court imposed a concurrent ten year sentence for the conviction of sexual battery committed upon his female victim. Defendant appealed, urging ten assignments of error.

FACTS
The victims of the instant offenses were the children of defendant's girlfriend. At the time the incidents occurred, the children lived with defendant, their mother, and an infant sister in a day care center in Covington, Louisiana.
The contact was discovered when the mother of the children surrendered custody after their paternal uncle reported possible physical abuse. The female victim was placed with Reverend Robert Fouquet and his family, and her brother was placed in a different home. Approximately two days after she was removed from her mother's custody, the female victim became hysterical when Rev. Fouquet attempted to awaken her one morning. Believing that her conduct was unusual, Rev. Fouquet requested that his wife, Sherrie, talk to her. The victim told her that "Festus" had put his "pickle" in her "private" and in her mouth. She later identified the "pickle" as defendant's penis. She further related that her "private" was her vaginal area and that defendant would also kiss her there. She also claimed that, when defendant put his penis in her mouth, a liquid would come out. The victim was between three and four years old at the time of these incidents.
The female victim revealed that her older brother also had been subjected to sexual contact by various men. Thereafter, Rev. *4 Fouquet went to the home in which the victim's brother had been placed; and, without revealing the substance of his sister's complaint, he told the male victim that he knew about the abuse. The young boy began to cry, and he asked the minister if anyone would beat him if he talked about the incidents. After the victim was assured that he would not be beaten, he asked that "Festus" not be told that he had talked about the conduct. He then revealed that "Festus" had put his "peanut" in the victim's mouth. He later identified the "peanut" as defendant's penis. This victim was approximately six years old at the time of these incidents.
According to the statements of the two victims, at least two other men, "Charlie" and "George," also participated in the sexual conduct. Charles Mizell, apparently an acquaintance of defendant, was also charged with offenses relating to these children; and his trial was pending at the time of the instant proceedings. The victims' statements also revealed that their mother consented to the abuse and may have actively participated in it and that their infant sister, who was between four and ten months old at the time, had also been forced to perform oral intercourse on one or more of the men. No charges were filed regarding the infant girl.

SUFFICIENCY OF THE EVIDENCE
In assignments of error one, two, three, and four, defendant claims that the evidence is insufficient to sustain the verdict. By assignment of error number one, defendant submits that the court erred by denying his motion for a post-verdict judgment of acquittal on the grounds that the state had not produced admissible evidence of his age; and by assignment of error number two, defendant contends that the court erred in permitting the state to introduce illegally obtained evidence of his age. By assignment of error number three, defendant complains that the court erred by denying his motion for a post-verdict judgment of acquittal on the grounds that the state had not produced admissible evidence of the age of his victims; and by assignment of error number four, defendant claims that the trial court erred by permitting the state to introduce objectionable documentary evidence of the victims' ages.
La.R.S. 14:43.1 defines sexual battery as the intentional "touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender" or the intentional "touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim." The statute further provides that the victim must not be the spouse of the offender, and that the offense is committed either where the offender compels the victim to submit by placing the victim in fear of receiving bodily harm, or where the victim has not yet attained fifteen years of age and is at least three years younger than the offender.
Oral sexual battery is essentially defined in La.R.S. 14:43.3 as a sexual battery committed by using the mouth or tongue of either the offender or victim. Aggravated oral sexual battery is defined in La.R.S. 14:43.4 as an oral sexual battery committed under various circumstances, including an oral sexual battery committed when the victim is under twelve years of age.
Defendant contends, therefore, that the state must prove the ages of both the victim and the offender as essential elements of the offenses of sexual battery and aggravated oral sexual battery. Although the state produced some evidence of each fact, defendant claims that evidence was inadmissible and, thus, the ages were not legally established.

EVIDENCE OF DEFENDANT'S AGE
Defendant filed a motion for discovery in which he requested notice of any confession or statement of any kind which the state intended to introduce into evidence. The state responded that no such statements existed. During the trial, the state called Sgt. John Dillon of the St. Tammany Parish Sheriff's office. Sgt. Dillon testified that, during the booking procedure, he asked defendant for his name, address, and age. Before he revealed the substance of *5 the responses, defendant objected on the grounds that the existence of the statements had not been disclosed to him during discovery and that he had previously filed a motion to suppress all statements made by the defendant, apparently as being unconstitutionally seized. The court overruled defendant's objections. Thereafter, Sgt. Dillon revealed that defendant had stated he was thirty years old.
Defendant now claims that the evidence of defendant's age was inadmissible because the state did not establish that he had waived his constitutional rights before he made this inculpatory statement. He has abandoned his claim that the state violated discovery procedures by failing to provide notice of its intent to introduce the statement before trial.[1]
Initially, we find no merit to defendant's argument that his age must be established as an essential element of the offenses. For either offense, the state must prove that the victim is under the age of fifteen; and, if relying upon La.R.S. 14:43.4(4), the state must establish that the victim is under the age of twelve. However, the critical element is the variance in the age of the offender and the victim, not the specific ages. For the reasons set forth below, we find that the state did present sufficient evidence that defendant was more than three years older than his victims.
Moreover, we find no merit to his claim that the state violated his constitutional rights by establishing his age through a statement he made as he was being booked for these offenses. Defendant concedes that Det. Dillon advised him of his rights before asking him for the information necessary to identify him. However, he claims that he did not waive his right to remain silent and that his consent to a waiver thereto cannot be presumed. Thus, the issue presented herein is whether or not the state was required to establish that defendant waived his Miranda rights before revealing his age for booking purposes. Although the Louisiana Supreme Court has noted that, even in cases wherein proof of age was relevant to the charged offense, the defendant's admission of his age during the booking procedure may not be the type of inculpatory statement of which the state is required to give pretrial notice, see State v. Holstead, 354 So.2d 493, 499 (La.1977), the specific issue presented herein is one of first impression in this state.
The weight of jurisprudence from other jurisdictions indicates that obtaining routine *6 biographical data while a suspect is being booked does not require a waiver of Miranda rights even where, as here, the information obtained relates to an element the state must prove at trial. See U.S. v. Avery, 717 F.2d 1020, 1024-1025 (6th Cir. 1983), cert. den., 466 U.S. 905, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984); U.S. v. Booth, 669 F.2d 1231, 1238 (9th Cir.1981); U.S. v. Prewitt, 553 F.2d 1082, 1085-1086 (7th Cir.), cert. den., 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1977); U.S. ex rel. Hines v. LaVallee, 521 F.2d 1109, 1113 (2d Cir. 1975), cert. den., 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976). See also State v. Banks, 322 N.C. 753, 370 S.E.2d 398, 403 (1988); State v. Ladd, 308 N.C. 272, 302 S.E.2d 164, 173 (1983); People v. Dalton, 91 Ill.2d 22, 61 Ill.Dec. 530, 532-533, 434 N.E.2d 1127, 1129-1130 (1982); Upshaw v. State, 350 So.2d 1358, 1364-1365 (Miss. 1977); Pulliam v. State, 264 Ind. 381, 345 N.E.2d 229, 236 (1976); State v. Cozad, 113 Ariz. 437, 556 P.2d 312, 314 (Ariz.1976); People v. Rivera, 26 N.Y.2d 304, 310 N.Y. S.2d 287, 258 N.E.2d 699, 702 (1970). For other sources supporting this conclusion, see 2 Cook, Constitutional Rights of the Accused, § 5.25 (2d Ed.1986); 1 LaFave and Israel, Criminal Procedure, § 6.7 (1984); 2 Ringel, Searches & Seizures, Arrests and Confessions, § 27.4(b) (2d Ed. 1983).
The need for biographical data is judicially recognized, presumably because agencies which arrest or jail individuals need to know the identity of the persons in their custody. See U.S. v. Abell, 586 F.Supp. 1414, 1421 (D.Me.1984). Decisions finding the statements of biographical data admissible without regard to Miranda have been decided on various grounds, including both the non-testimonial nature of the evidence and the non-investigatory nature of the question. Herein, the trial court found that defendant's statement of his age was admissible because it was non-testimonial in nature. This view is in accord with U.S. v. Prewitt, wherein the Seventh Circuit found that "[t]he Fifth Amendment prohibits only compelled testimony, and the fact that defendant has certain identifying characteristics which police officials record does not render the disclosure of those characteristics testimonial in character." U.S. v. Prewitt at 1085.
Many of these courts which found that booking questions are exempt from the requirements of Miranda further noted that the factual setting of each encounter of this type should be closely scrutinized because even a relatively innocuous series of questions may, in light of the factual circumstances and the susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response. See U.S. v. Avery at 1025. However, other courts have flatly stated that basic identifying information for booking purposes may be obtained without being considered in violation of the subject's rights. See U.S. ex rel. Hines v. LaVallee at 1113; State v. Cozad 556 P.2d at 314. We conclude that the better course is to consider the admissibility of such statements in light of the circumstances surrounding their utterances. However, the focus is on the time and circumstances under which such a statement was obtained, not the use to which it was ultimately put; that the information incidentally helped establish an essential element of the crime for which defendant was booked does not make it more than routine at the time it was obtained. See e.g. State v. Banks 370 S.E.2d at 403.
Herein, the record reflects that defendant was arrested after he voluntarily turned himself in to the police. Defendant's age was obtained as routine identifying data. Although Det. Dillon testified that he was generally aware that the state would need to establish defendant's age during trial, he specifically denied that he deliberately elicited defendant's response as an inculpatory statement. The record does not reveal any basis to dispute Det. Dillon's testimony. Defendant's age was readily available from a number of public sources; and, after all, the state had only to prove that defendant was more than nine years of age.
Accordingly, we find no error in the introduction of testimony establishing that defendant related that he was thirty years old during the booking process. Although *7 the state would, of course, be better served by the introduction of the birth certificate or other public document, we find this statement admissible evidence of the variance between defendant's age and the ages of the victims. Therefore, these assignments of error have no merit.

EVIDENCE OF THE VICTIMS' AGES
Defendant further argues that the state failed to prove the ages of the victims. He complains that the court permitted the state to introduce inadmissible evidence of the victims' ages and, if such evidence is stricken, the record does not contain evidence of an essential element of the state's case.
As previously noted, the specific age of the victim is not an essential element of either of the instant offenses. Herein, the state was required to prove only a variance of more than three years between the ages of the victims and the accused and as to the charges of sexual battery and oral sexual battery that the victims were under the age of fifteen.
Both of the victims testified, and each child related his age at the time of the offenses. The male victim also stated that his sister was four years old during the time these incidents occurred. Accordingly, we find no merit to defendant's argument that the state presented no evidence of the ages of the victims in order to establish the variance between the ages of the victims and the offender.
Defendant complains of the admission of uncertified, unauthenticated photocopies of the birth certificates of the victims. The copy of the male victim's birth certificate was a photocopy of the original, and it bears no certifying characteristics. The copy of the female victim's birth certificate contains an original seal of the Vital Records Registry of the State of Louisiana. Even assuming, however, that the documents should not have been introduced, the victims' testimony sufficed to establish their ages; and a trial judge, by virtue of his training in the law, is able to disregard improperly introduced evidence which is possibly prejudicial. See State v. Crothers, 278 So.2d 12, 14-15 (La.), cert. den., 414 U.S. 1096, 94 S.Ct. 731, 38 L.Ed.2d 555 (1973); State v. Bowman, 434 So.2d 1175, 1178 (La.App. 1st Cir.1983). Accordingly, these assignments of error have no merit.

DUPLICITOUS COUNTS
By assignment of error five and six, defendant complains that the bill of information improperly charges that two separate counts of aggravated oral sexual battery were committed upon the male victim. In assignment of error number five, defendant contends that the court erred by denying his motion for a post-verdict judgment of acquittal as to one or the other of the counts because the evidence did not support a conviction of more than one count. In assignment of error number six, defendant argues that the court erred by denying his pretrial motion to quash either count I or count II on the grounds that the two charges were duplicitous.
At a hearing on defendant's motion to quash, the state argued that the evidence would prove that the conduct complained of occurred on at least two separate occasions; and, therefore, the state charged more than one occurrence. Thereafter, the trial court denied the motion. Following the convictions, defendant again urged by a motion for a post-verdict judgment of acquittal that the counts were duplicitous. The trial court again denied the motion.
Defendant complains that the trial court erred by denying his motion for post-verdict judgment of acquittal because the state's evidence established only one occurrence involving the male victim. The victim testified as follows:
Q What other things did he do to you, [name]?
A He made me suck on his privates.
Q He made you suck on his private?
A Yeah.
Q Where did that happen? Do you remember?
A Yeah.
Q Who were you living with when that happened?
A Mom and Festus.

*8 Q Did that happen more than one time?
A Huh-huh (negative response).
BY DEFENSE COUNSEL: I know he's a child, but I have to object to leading.
BY THE COURT: That's all right. Overruled.
Q I'm sorry. Go ahead. Did he do it more than one time?
A Yeah.
Q Did he do it more than two times?
A No.
Q He only did it two times?
A (Nods head affirmatively).
Defendant complains that the victim's original response to the state's question, "Did that happen more than one time?" indicates that only one incident occurred. However, the victim's later testimony was quite specific, and the victim positively testified that defendant had forced him to "suck on his privates" two times. The victim's initial response could well have been a child's literal response to the question in light of the preceding query; that is, that he only lived with "Mom and Festus" one time. In any event, his later testimony was very clear.
The standard of review of the sufficiency of the evidence is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the offense beyond a reasonable doubt. La.Code Crim.P. art. 821. The victim's testimony is sufficient to establish the elements of the offense beyond a reasonable doubt. State v. Brown, 546 So.2d 1265, 1274 (La.App. 1st Cir.1989). We find that the trial court, as the trier of fact, could have found that the state proved beyond a reasonable doubt that the conduct complained of occurred on two separate occasions.
With regard to defendant's claim that the trial court erred by denying his motion to quash one of the counts, he argues on appeal only that the evidence established at trial confirmed his claim that the counts were duplicitous. Having found no merit to defendant's claim that he was entitled to a motion for post-verdict judgment of acquittal on these grounds, we find no merit to his claim that the court erred by denying his motion to quash urged on the same grounds.

WITNESS COMPETENCY
By assignment of error number seven, defendant submits that the trial court erred by finding that the two child-victims were competent to testify. In particular, defendant complains of the testimony of the then five year old as incredible.
At the time of defendant's trial, La.R.S. 15:469 provided for the determination of the competency of a witness, as follows:
Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
The determination by the trial court that a child witness is competent to testify is based not only upon the child's answers to questions testing his understanding but also on the child's overall demeanor on the witness stand. State v. Humphrey, 412 So.2d 507, 516 (La.1981). For that reason, the court is vested with wide discretion in determining competency; and, on appeal, the court's ruling is entitled to great weight. State v. Noble, 342 So.2d 170, 172 (La.1977). A ruling by the trial court that a witness is competent to testify will not be disturbed in the absence of manifest error. State v. Arnaud, 412 So.2d 1013, 1018 (La. 1982).
The trial court conducted a hearing to determine the competency of each of the witnesses and, thereafter, determined that both children were competent to testify. The male victim testified that he was seven years old and in the first grade. He testified that he knew what it meant to tell the truth and that he knew what it meant to tell a lie. He related that he would tell the truth and that he would tell the court only what he remembered.
*9 The female victim testified that she was five years old and that she remembered some of the things that happened when she was living with her mother. She further related that she knew what it meant to tell the truth and to tell a lie, and she stated that she was going to tell the truth.
At the conclusion of the predicate hearing, the trial court found that the female victim was a "very alert and talkative five year old" and that she would be capable of testifying. We find no error in the trial court's ruling. It was obvious that the victim was confused and frightened by the courtroom proceedings, and that fact is reflected by her testimony. Particularly on cross-examination, on issues apart from the actual facts of the offenses, her testimony reflected her youthful apprehension; and, at times, she appeared to agree to nonsensical suggestions. However, her testimony regarding the events which occurred was very clear and graphic; and the details she supplied were unlikely to be the product of fabrication. Moreover, her testimony was at least partially corroborated by physical evidence presented by a physician who examined her and her siblings upon their removal from their mother's custody.
Accordingly, we find no manifest error in the trial court's determination that both of these victims were competent to testify. We further find no error in the trial court's refusal to strike the female victim's testimony on the grounds that that testimony was incompetent. This assignment of error has no merit.

ADMISSION OF HEARSAY TESTIMONY
By assignment of error number eight, defendant submits that the trial court erred by permitting the state to introduce hearsay evidence, the first complaint of the male victim. He contends this statement, introduced through the testimony of Rev. Fouquet, was not admissible as the first complaint of a sex offense (an exception to the general rule prohibiting the introduction of hearsay testimony) because the statement was made approximately one month after the victim's removal from the threatening atmosphere and the statement was not spontaneous but was made in response to questioning by Rev. Fouquet. Defendant further claims that the court should not have permitted the state to introduce the statement before the victim actually testified and that the substance of the statement should not have been introduced, only the fact that a complaint was made.
In prosecutions for sexual offenses, the original complaint of the victim is admissible under either the res gestae doctrine or as a special exception to the hearsay rule. See State v. Pace, 301 So.2d 323, 326 (La.1974); State v. Anderson, 526 So.2d 499, 502 (La.App. 1st Cir.1988), writ denied, 537 So.2d 1160 (1989). The nature of the crime and the identity of the offender disclosed in the complaint is admissible testimony. State v. Pace; State v. Anderson. Accordingly, we find no merit to defendant's claim that the state could introduce only the fact that a complaint was made and that the offer could be made only after the testimony of the victim.
Despite defendant's claim that the statement was the product of questioning by Rev. Fouquet, the testimony of that gentleman reflects that he simply reassured the young child that he knew what had happened and that no harm would come to the child if he spoke out. In any event, even if the statement had been made in response to questioning, the circumstances clearly indicate that it was the product of a shocking episode and not a fabrication. See State v. Prestridge, 399 So.2d 564, 572 (La.1981). "Because the child has no clear understanding of what has been done to her, her `original complaint' often consists of responses to the questioning of a patient, persistent adult who draws the child's story from her." State v. Garay, 453 So.2d 1003, 1007 (La.App. 4th Cir.1984).
Similarly, we find no merit to defendant's claim that the statement should have been excluded because of the length of time that had passed since the child's removal from his mother's home. "The original complaint of a young child is the *10 statement made at the first reasonable opportunity under the particular facts and circumstances of the case." State v. Racca, 525 So.2d 1229, 1233 (La.App. 1st Cir. 1988).
The victim testified that "Festus" punched him, and threw him on the floor and whipped him. He further related that he was afraid of defendant during the time that defendant lived with them and that he still feared him. Whatever the role of the victims' mother, the removal of the child and his two sisters from her care undoubtedly further confused and frightened him. The children were removed from their mother's custody after allegations of physical abuse; at that time, the possibility of sexual abuse was not considered. Therefore, although testimony in the record indicates that the victim was "out of control" after his removal, the family with whom the young child was placed apparently considered his behavior was caused by physical trauma and did not search for an additional cause. In any event, we find that the circumstances herein indicate that the conversation with Rev. Fouquet was the first opportunity the victim had to discuss the issue with a compassionate, reassuring adult. Accordingly, we find no merit to defendant's claim that the statement should be excluded because of the length of time that had passed since he was removed from the disturbing atmosphere.

REFUSAL TO CALL VICTIMS FOR PRELIMINARY HEARING
By assignment of error number nine, defendant submits that the trial court erred by granting the state's motion in limine to prevent his calling the child-victims to testify at the preliminary examination. He contends the court's action denied his constitutional rights to a preliminary examination and to confront the witnesses by the court's ruling.
"The right to a preliminary examination shall not be denied in felony cases except when the accused is indicted by a grand jury." La. Const. Art. I, Sec. 14. La.Code Crim.P. art. 294 provides for the examination of witnesses at the preliminary examination, as follows:
A. At the preliminary examination the state and the defendant may produce witnesses, who shall be examined in the presence of the defendant and shall be subject to cross-examination. The defendant may also testify, subject to cross-examination. A record of the preliminary examination proceedings shall be made.
Thus, clearly defendant was entitled to subpoena witnesses at the hearing; and the court's attempt to spare the children from this ordeal, though laudable, was incorrect. However, despite his assertion to the contrary in his brief, the record does not reflect that defendant actually attempted to subpoena the witnesses. Aside from argument on the motion in limine, the only reference to the summoning of the children at the hearing was by the attorney for Charles Mizell, who listed the children as his witnesses at the hearing. Mizell was not a co-defendant.
In any event, a preliminary examination is designed primarily to determine whether or not probable cause exists to charge the accused. State v. McCloud, 357 So.2d 1132, 1134 (La.1978). Errors alleged to have occurred at the preliminary hearing are moot after the defendant has been tried and convicted. See State v. Sheppard, 350 So.2d 615, 626 (La.1977). Even in cases wherein the defendant was improperly denied his right to a preliminary examination, the Louisiana Supreme Court has found that error moot after conviction unless prejudice is shown. See State v. Washington, 363 So.2d 509, 510 (La.1978); State v. Strother, 362 So.2d 508, 510 (La. 1978). If defendant felt that his right to a preliminary examination was abridged by the court's ruling, he should have asserted that right before trial by means of an application for supervisory review. See State v. Brent, 347 So.2d 1112, 1118 (La.1977). This issue is now moot. Accordingly, this assignment of error presents nothing for our review.

EXCESSIVE SENTENCE
By assignment of error number ten, defendant submits that the sentences imposed *11 are excessive. He claims that the sentences are excessive because three of the sentences (for two of the convictions of aggravated oral sexual battery and for the conviction of sexual battery) were the maximum penalties the court could have imposed; and the fourth sentence was only five years less than the maximum. He further contends that the sentences are excessive in light of the fact that he had no prior criminal record, that at least two of the counts were duplicative, and because all four of the offenses may have happened nearly simultaneously.
The Code of Criminal Procedure sets forth items which must be considered by the trial court in imposing sentence. La.Code Crim.P. art. 894.1. The trial court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984). In light of the criteria expressed by article 894.1, a review of the individual excessiveness must consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762 (La. 1979). However, the trial court has wide discretion in the imposition of sentences; and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Louis, 496 So.2d 563, 568 (La.App. 1st Cir.1986). The maximum sentence permitted under a statute may be imposed only in cases involving the most serious offenses and the worst offenders. State v. Easley, 432 So.2d 910, 914 (La.App. 1st Cir.1983).
We find no abuse of discretion herein. We have previously found no merit to defendant's claim that the two counts involving the male victim were duplicitous. Unquestionably, multiple sexual offenses against children of such young age by one who stands in a position of authority or surrogate parent are the worst possible incidents of aggravated oral sexual battery and sexual battery. Despite his relative law-abiding life before these offenses, we have no hesitation in finding that defendant is one of the worst offenders. This record is replete with evidence of the severe emotional harm caused by these actions. Rev. Fouquet and his wife both testified to the horrendous nightmares suffered by the female victim, which continued as of the time of trial, well over a year after she was removed from defendant's influence. Mrs. Fouquet further related that the female victim continued to behave inappropriately with the other children around her and that she had found her posing suggestively "because I used to have to do that for Festus." The record further suggests that the male victim's behavior was uncontrollable after his removal and that he remained frightened of defendant even as of the time of trial.
In its reasons for imposing sentence, the court noted that there would be an undue risk that, during the period of a suspended sentence or probation, defendant would commit another crime. The court found that defendant is in need of correctional treatment and a custodial environment and that a lesser sentence would deprecate the seriousness of these crimes. The court further found that defendant's criminal conduct caused serious psychological harm and possible physical harm to the children involved herein, that defendant did not act under provocation, and that there are no substantial grounds tending to excuse or justify his conduct. The court noted that this offense was defendant's first criminal conviction; however, the court found that no manner existed for defendant to adequately compensate these children for the losses they sustained.
We find, therefore, that the sentences imposed are not excessive. This assignment of error has no merit.
The convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Citing State v. Lane, 414 So.2d 1223, 1226 (La.1982), the state submits that the statement was admissible because Det. Dillon was not questioning defendant about the substance of the offenses at the time he obtained defendant's age. We do not find the instant situation to be analagous to the circumstances presented in State v. Lane. In Lane, the defendant originally had been arrested in connection with a brutal attack on a young woman. The victim subsequently died, and the defendant was rebooked for first degree murder. Upon learning of the victim's death, he attempted to explain his participation in the offense. Over the repeated requests from the booking officer that he remain silent, the defendant related that he had "topped" his victim. The officer asked him if that meant he had sexual intercourse with her, and the defendant stated that he had. Thereafter, although he had not been advised of his Miranda rights, he answered a number of questions asked by the booking officer. At trial, the defendant sought to exclude the statements given to the booking officer because of the Miranda violation. The Court found that the defendant's admission that he had "topped" the victim was not a product of custodial interrogation because the booking officer had requested that he remain silent and was not attempting to elicit inculpatory statements. The Court further found the defendant's explanation that he had sexual intercourse with the victim was admissible because, although the admission was in response to police questioning, the officer was only attempting to clarify the defendant's voluntary statement. In contrast, defendant's remark herein was not a spontaneous, voluntary admission or a clarification of a voluntary statement. Clearly, the statement itself was deliberately elicited, ostensibly for its identification value. Moreover, Det. Dillon testified that he knew that defendant's age was a relevant issue for the prosecution, although he denied that he was deliberately attempting to elicit an inculpatory statement. He further related that he never questioned suspects when he booked them into the jail and that he did not ask defendant to waive his rights before he obtained the information necessary to book him. Thus, we do not find the statement admissible under State v. Lane.