990 So.2d 49 (2008)
STATE of Louisiana
v.
Charles CONERLY.
No. 2008-K-0414.
Court of Appeal of Louisiana, Fourth Circuit.
July 16, 2008.
Keva Landrum-Johnson, District Attorney, Rachel Luck Africk, Assistant District Attorney, Cate Bartholomew, Assistant District Attorney, New Orleans, LA, for State of Louisiana.
Sarah B. Belter, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for Charles Conerly.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge ROLAND L. BELSOME).
CHARLES R. JONES, Judge.
On November 2, 2007, the State filed a bill of information charging Charles Conerly, *50 with one count of forcible rape, a violation of La. R.S. 14:42.1. The defendant entered a not guilty plea at his arraignment on November 9, 2007. On December 20, 2007, the defendant filed pretrial motions; however, before they were heard, a competency hearing was scheduled for March 6, 2008. On that date, the district court heard testimony and found the defendant competent to proceed. On March 25th, the defense filed a motion to produce the rape kit and the medical examination report as well as a subpoena for witnesses to appear at the preliminary hearing. On April 4, 2008, the court began a combined motion to suppress identification and preliminary hearing. When the court ordered the victim to testify in connection with the preliminary examination, the State objected and gave notice of intent to seek writs. The court set a return date for April 11, 2008, and recessed the hearing to June 6, 2008. The State timely filed this writ application.

FACTS
On August 31, 2007, Detective Matthew Riles, a New Orleans police officer assigned to the sex crimes unit, was called to a residence in the 2100 block of New Orleans Street to investigate a report of a forcible rape. When he arrived, he spoke first with district officers and then with the victim. According to the testimony of Det. Riles, the victim, T.J.[1] told him that earlier in the day an ex-boyfriend of hers came to her residence, came inside, and then vaginally raped her. T.J. told the detective that her former boyfriend's name was Charles Conerly. She further told the officer that their relationship had occurred several years before. According to Det. Riles, T.J. had a somewhat diminished mental capacity, and the defendant and she had attended some type of school together. After interviewing the victim, Det. Riles compiled a photographic lineup from which T.J. selected defendant's photograph as that of the person who raped her. This identification occurred on September 5th, a week after the rape. Det. Riles then obtained an arrest warrant for the defendant.
On cross-examination, Det. Riles stated that he was called to the victim's residence at approximately 1:15 p.m. The only persons present were the district officers and T.J. One of the district officers told Det. Riles that they had responded to a call from the location and, once there, the victim stated that she had been raped by an ex-boyfriend. Det. Riles was asked to relate in detail what he was told by the district officer; however, the detective explained that district officers are trained not to conduct further questioning once a victim identifies herself as a rape victim. However, Det. Riles admitted that the district officer said that T.J. told him that she believed the rapist had broken into her residence. After a brief on-scene investigation which indicated this was unlikely, the victim changed her statement to the police. She admitted that she lied and that the defendant had not broken in, but she had allowed him to come inside. T.J. stated that she lied because she was afraid her mother would be mad at her. Det. Riles stated that he never asked T.J. why she thought her mother would be mad at her.
In further cross-examination, defense counsel successfully elicited from Det. Riles that the victim's complete statement was that she was watching television when she heard a knock at her door. She answered the door and found the defendant, whom she was not expecting; she was not even aware that he knew where she lived. *51 She invited the defendant inside and gave him a glass of water. At that point, according to T.J., the defendant became aggressive, stating that he wanted to make love to her. She refused, and he raped her.
T.J. also told Det. Riles that she had encountered the defendant earlier that week while at the Tulane Medical Center. The two talked until the victim's mother arrived and picked her up.
Det. Riles also testified that he interviewed the victim's mother at the residence when she arrived, which was near the end of his interview with T.J. T.J.'s mother said that she had called her daughter from work a few times that morning, and that at one point T.J. did not answer. T.J.'s mother subsequently received a call from the police informing her that T.J. had been assaulted. T.J.'s mother told Det. Riles about seeing the defendant talking with her daughter at the Tulane Medical Center a few days before. The defendant walked the two women to the car; before that time she had not seen him in about eight years.
Following the on-scene interview, Det. Riles, accompanied by T.J.'s mother, took her to University Hospital for a sexual assault exam. He did not testify as to the results of the exam, however.
Following Det. Riles' testimony, the parties presented oral argument to the district court on the issue of whether T.J. should be required to testify. The prosecutor argued that, because the victim and the defendant were acquainted, the out of court identification was merely a formality and, therefore, her testimony was not needed to resolve the motion to suppress identification. Defense counsel argued that there was also a preliminary hearing being held. She contended that, because the victim had lied to the police, her testimony was critical to a fair determination of whether there was probable cause to justify holding the defendant for trial. The district court agreed that, because of her inconsistent statement, good cause to require the victim's testimony existed. This writ application follows.

DISCUSSION
The sole issue in this matter is whether the defense should be allowed to call the victim to testify at the preliminary hearing. The State contends that the defense failed to meet its burden of showing good cause under La. R.S. 46:1844(C)(3), which states:
(3) The victim and the victim's family may refuse any requests for interviews with the attorney for the defendant employee or agent working for the attorney for the defendant. Before any victim may be subpoenaed to testify on behalf of a defendant at any pretrial hearing, the defendant shall show good cause at a contradictory hearing with the district attorney why the subpoena should be issued.
The State further cites La. Const. art. I, § 25 (1974), which enshrined in the Louisiana Constitution certain rights of a victim of a crime, including the right to refuse to be interviewed by the accused or a representative of the accused. The provision also directed the legislature to enact laws to implement the section. La. R.S. 46:1841 et seq., the Victims' Rights Act, are the statutes which were enacted in response to the constitutional directive.
This Court notes that La. R.S. 46:1844(C)(3) specifically provides that "[b]efore any victim may be subpoenaed to testify on behalf of a defendant at any pretrial hearing, the defendant shall show good cause." (emphasis added) The transcript in the instant writ application indicates that the subpoena ordering the *52 victim to appear at the pretrial hearing was issued prior to a hearing to determine whether the defendant had established the requisite "good cause" in requesting the victim's presence at his pretrial hearing, as reflected in the following colloquy:
THE STATE: Your Honor, at this time the State would argue that under Louisiana Revised Statute 46:1844(C)(3), it is not necessary to call the victim, [T.J.], in this case. The lineup procedure was
BY THE COURT: Did you subpoena the victim?
DEFENSE: I did, yes.
BY THE COURT: And the victim is here?
THE STATE: Yes, Your Honor. The victim is here. Again, under Louisiana Revised Statute 46:1844, Miss Belter, in all respect to her, has not followed the statute:
"The victim and the victim's family may refuse any requests for interviews with the attorney for the defendant or any employee or agent working for the attorney for the defendant. Before any victim may be subpoenaed to testify on behalf of a defendant at any pretrial hearing, the defendant shall show good cause at a contradictory hearing with the district attorney why the subpoena should be issued."
So this contradictory hearing should have taken place prior to the subpoenas being issued. I'll also note for the record that I did not receive a copy of the defendant's motion for this, or I would have brought it to the Court's attention. But in Miss Belter's defense, she did call me and ask if I had received it on Friday. I had not.
BY THE COURT: So we have to do a hearing to determine whether or not the victim should be questioned and a probable cause hearing?
DEFENSE: Yes, Your Honor.
Although the prosecutor argued that the statements made by the victim, T.J., could be supported by the fact that she knew the defendant by name and that she identified him in a photographic line-up, the defense asserted that the defendant's constitutional right to confront his accuser was paramount. The district court resolved the issue in open court finding that good cause existed, pursuant to La. R.S. 46:1844(C)(3), to subpoena the victim to appear pretrial for questioning by the defense.
There appears to be no cases which have specifically addressed the "good cause" requirement found in La. R.S. 46:1844(C)(3). Prior to the enactment of the Victims' Rights Act, however, there were cases which addressed the right of a defendant to call a victim to testify at a preliminary examination as provided in La.C.Cr.P. art. 294(A)[2]:
At the preliminary examination, the State and the defendant may provide witnesses, who shall be examined in the presence of the defendant and shall be subject to cross-examination. The defendant may also testify, subject to cross-examination. A record of the preliminary examination proceedings shall be made.
In State v. Herrin, 562 So.2d 1 (La.App. 1 Cir.1990), the appellant argued that the trial court erred by granting the State's motion in limine to prevent him from calling the child victims to testify at the preliminary examination. The First Circuit stated: "Clearly defendant was entitled to *53 subpoena witnesses at the hearing; and the court's attempt to spare the children from this ordeal, though laudable, was incorrect." Herrin, 562 So.2d at 10. The First Circuit ultimately found that any error committed at the preliminary examination was moot after the defendant has been tried and convicted; therefore, the defendant's argument presented nothing for that court to review. The court suggested that the appellant's proper avenue for review was by way of supervisory writ filed before trial.
However, a different result occurred when this Court faced this issue in State v. Tu Van Bi, unpub., 93-0820 (La.App. 4 Cir. 5/12/93). The relator in that case requested that he be entitled to call a thirteen-year old victim at a preliminary hearing after the State had presented its witnesses. The trial judge denied this request. This Court denied writs concluding that there was no abuse of the trial court's discretion. One member of the panel concurred, citing Herrin. He concluded that the relator was entitled to call the victim to the stand at the preliminary hearing, but found the issue moot because the relator was released from custody.
Likewise, in State v. David Quinn, unpub., 92-1314 (La.App. 4 Cir. 6/24/92), the trial judge denied the relator's request that he be entitled to examine a child victim at a preliminary hearing in an aggravated crime against nature case to prove that the weight of evidence against him was weak. This Court denied writs concluding that there was no abuse of the trial court's discretion in determining the competency of a witness. Judge Jones dissented, citing Herrin and concluded: "Relator is entitled to provide witnesses who shall be examined in his presence and subject to cross-examination." The Louisiana Supreme Court denied writs from this court's ruling. State v. Quinn, 602 So.2d 14 (1992).
In State v. Spears, 92-1701 (La.App. 1 Cir. 3/11/94), 634 So.2d 9, the defendant subpoenaed the victim to testify at the preliminary examination, but the trial court unequivocally told counsel that he could not call the victim if probable cause was found after the State's witness testified. The First Circuit reversed, stating that "[t]he court's refusal to allow the defense to call the victim as a witness ignores the language of Louisiana Code of Criminal Procedure article 294...." Spears, 634 So.2d at 11. The Court remanded for a reopened hearing at which the defense was to be allowed to call witnesses.
In State v. Michael Yates, unpub., 95-K-0283 (La.App. 4 Cir. 3/11/95), the trial court refused to allow the defense to call the forcible rape victim as a witness at the preliminary hearing on the grounds that the victim's testimony was not needed to decide the only relevant question, whether there was probable cause to believe that the defendant had committed the offense. This Court relied upon Spears and reversed that ruling. The Supreme Court reversed this Court and reinstated the trial court's judgment without assigning any reasons. State v. Yates, 95-0812 (La.5/5/95), 653 So.2d 1181.
The First Circuit continued to follow its decision in Spears and Herrin in State v. Lynch, 94-0543 (La.App. 1 Cir. 5/5/95), 655 So.2d 470. the defendant in Lynch was charged with armed robbery. When he attempted to subpoena the victims to testify at the preliminary hearing, the State moved to quash the subpoenas; the trial court granted the State's motion. After determining that the trial court should not have quashed the subpoenas, the court found that the issue was moot because the defendant had been convicted.
*54 The instant case presents a very close question. The defense at the hearing and in its response correctly argued that the victim had apparently changed her story regarding the events, raising legitimate issues as to her credibility. Also, according to the defense in its response, the State has not yet provided any other evidence such as the rape exam results to the defense, leaving only the victim's statement as the evidence against him. Furthermore, the defendant is charged with forcible rape, but nothing in Det. Riles' testimony provides a hint of what actually occurred to explain why the defendant was arrested for forcible rape and not simple rape, except for T.J.'s testimony that the defendant became aggressive. Nevertheless, it is not unusual in a rape case that the only evidence is the victim's statement.
As stated earlier, there is no specific case law which elaborates on the term "good cause" as it relates to La. R.S. 46:1844(C)(3). However, Black's Law Dictionary, 6th Ed. (1991), defines the term "good cause" as follows:
[The][t]erm generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law. People v. Gillet, Colo.[(1981)], 629 P.2d 613, 618. Legally sufficient ground or reason. [The][p]hrase "good cause" depends upon circumstances of individual case, and finding of its existence lies largely in [the] discretion of [the] officer or court to which decision is committed. Wilson v. Morris, Mo.[(1963)], 369 S.W.2d 402, 407. It is a relative and highly abstract term, and its meaning must be determined not only by verbal context of statute in which the term is employed but also by context of action and procedures involved in type of case presented. Wray v. Folsome, D.C.Ark.[(1958)], 166 F.Supp. [390,] 394-395.
In the instant matter, the district court concluded that good cause does exist to permit the defense to call the victim as a witness at the preliminary examination. By inserting the specific burden of good cause into La. R.S. 46:1844(C)(3), the legislature has obviously decided that the trial courts should balance the defendant's constitutional right to confrontation with the constitutional rights of victims of crimes. In order to reverse a trial court's decision in instances which require a balancing of such interests, this Court would need to be convinced that the trial court abused its discretion, however, in the instant matter we conclude that the district court did not abuse its discretion.
Accordingly, the relator's writ application is denied.
WRIT DENIED.
BELSOME, J., concurs in the result.
NOTES
[1] The victim's full name is not disclosed in this disposition in accordance with the confidentiality requirement of La. R.S. 46:1844(W).
[2] La.C.Cr.P. art. 294(B) provides that a defendant charged with a crime against a juvenile may not subpoena the victim to testify except upon an order issued by the court. The paragraph does not include the "good cause" language found in La. R.S. 46:1844(C)(3).